Joey **RODRIGUEZ**, Appellant,

v.

The **STATE** of Texas, Appellee.

NO. 07–96–0402–CR

Court of Appeals of Texas, Amarillo.

Oct. 29, 1997.

Roger C. Rocha, Law Office of Roger C. Rocha, Laredo, for appellant.

William C. Sowder, Michael West, Lubbock County District Attorneys, Lubbock, for appellee.

Before BOYD, C.J., and QUINN and REAVIS, JJ.

QUINN, Justice.

Joey Rodriguez, appellant, was convicted by a jury of aggravated assault and punishment was assessed at life imprisonment. In ten points of error, he argues that the evidence is insufficient to sustain the verdict, the trial court erred in admitting evidence of extraneous offenses, the trial court erred in admitting evidence of appellant's gang affiliations, the court erred in admitting a videotaped interview of appellant, and that appellant did not receive effective assistance of counsel at trial.[1] We affirm.

### Factual Background

On September 23, 1995, Bobby Lira and Steve Reyes went to a party at Pete Arellano's house. Present at the party were appellant, Pete Arellano, two or three girls, and a keg of beer. The party continued until about 8:00 or 8:30 a.m. on September 23, when the keg was moved approximately two blocks away to appellant's house on Amherst street. When the group arrived at the Amherst residence, appellant's brothers, Austin and Juan, joined in the drinking.

At some point an argument broke out. In response, Lira pulled a gun out of Arellano's pocket. The gun was then aimed at Austin. Appellant then came into the room and engaged Lira in a struggle for the gun. In the midst of this struggle, the gun discharged, sending a bullet into the ceiling. Appellant then got the gun away from Lira who, quite wisely, ran out the door. Appellant pursued Lira outside and, according to Reyes, chased him down the street while firing at him. According to Austin, appellant stood in the yard, fired several shots into the air, but did not aim at Lira. However, others testified that Austin directed appellant to shoot Lira.

Aidan Rivera, who lived approximately one block away from appellant, testified that he heard gunshots the morning of September 23, 1995. As he headed toward his neighbor's house to call 911, he saw appellant and Austin chasing after some teenagers. According to Rivera, appellant had a gun in his hand. Rivera told appellant to "snap out of it" and go home.

Officer Roseanna Langston of the Lubbock Police Department testified that she responded to a "shots fired" call on Amherst street on September 23, 1995. As she approached appellant's residence, she saw him running back toward the house with his hand jammed into his pocket. Effort was made to halt him, but to no avail. Appellant escaped into his house and the officer gave chase. Her progress was momentarily impeded when appellant's brothers stopped her from entering the house. Eventually, she forced herself through the blockade, entered the house, saw appellant exiting a back room, subdued him, and conducted a "plain view" search for a firearm. No weapon was found.

### Point of Error One

In his first point of error, appellant contends that the evidence is insufficient to sustain a finding of guilty. Though he does not state whether he questions legal or factual sufficiency of the evidence, we address both in the interest of justice and overrule the point.

### a. Standard of Review

In determining whether a verdict enjoys the support of legally sufficient evidence, we ask if, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense beyond a

---

**1.** Neither party requested oral argument. Because the deadline for requesting same has lapsed and in order to expedite the disposition of the cause (it being one of the older criminal cases on the court's docket), we suspend the 21 day notice requirement of Texas Rule of Appellate Procedure 39.9. *See* Tex.R.App. P. 2.

reasonable doubt. *King v. State*, 895 S.W.2d 701, 703 (Tex.Crim.App.1995). If the answer is yes, then the evidence underlying the conviction is legally sufficient.

However, in assessing the verdict's factual sufficiency, we put aside the requirement that the evidence be viewed through a prism of light favorable to the State. Instead, our task is to peruse the entire record and decide whether the overwhelming weight of the evidence so contradicts the verdict as to make that verdict clearly wrong or unjust. *Clewis v. State*, 922 S.W.2d 126, 129 (Tex.Crim.App. 1996). In defining when the scale so tilts, the *Clewis* court invoked such nebulously descriptive terms as "shocks the conscience" and "clearly demonstrates bias." *Id.* at 135.

Finally, and regardless of which standard is utilized, it remains axiomatic that we defer to the jury's resolution of factual disputes. That is, the power to reasonably infer facts from the evidence, to resolve credibility issues, and to determine who to believe or disbelieve is not ours but the jury's. *Depauw v. State*, 658 S.W.2d 628, 633–34 (Tex. App.—Amarillo 1983, pet. ref'd).

### b. Application of Standard to Facts

The indictment, in pertinent part, alleged that appellant, "on or about the 23rd day of September, 1995, did then and there intentionally and knowingly threaten Bobby Lira with imminent bodily injury and did then and there use a deadly weapon, to-wit: a firearm." No one questions that a firearm is a deadly weapon. *See* TEX. PENAL CODE ANN. § 1.07(a)(17) (Vernon 1994) (including a firearm within the definition of a deadly weapon); *Villatoro v. State*, 897 S.W.2d 943, 945 (Tex.App.—Amarillo 1995, pet. ref'd) (holding a firearm to be a deadly weapon). Nor does anyone actually dispute the evidence illustrating that appellant fired the weapon during the fracas. Rather, appellant contends that the evidence fails to show that he "threatened Lira with imminent bodily injury." We disagree.

Pointing a gun at a supposed victim is sufficient threat to warrant conviction for aggravated assault. *See Villatoro v. State*, 897 S.W.2d at 945. Here, at least one witness testified that he saw appellant pointing the gun *at Lira.*[2] Given this witness' testimony and the authority of the jurors to accept it, we cannot say that no rational juror could have found appellant guilty beyond a reasonable doubt of aggravated assault. Nor can we say, after reviewing all of the evidence that the verdict is clearly wrong or unjust.

### Point of Error Two

In his second point of error, appellant alleges that the evidence is insufficient to prove that he attempted to cause the death of Bobby Lira, as alleged in the jury charge. We overrule this point as well.

Though not contending that the definition of aggravated assault requires proof that he attempted to cause the death of Lira, appellant nevertheless posits that the State was required to offer such proof. Allegedly, a part of the jury instructions indicated that proof of attempt to cause death was required; therefore, the State was obligated to proffer evidence satisfying that appellant attempted to kill Lira. We disagree.

When an instruction places a burden of proof upon the State greater than that required by statute, the State must meet that higher burden, according to appellant. Though the rule used to be that when an instruction places a higher burden of proof upon the State, the State must satisfy it, that is no longer true. Instead, the sufficiency of the evidence is gauged against "the elements of the offense as defined by the hypothetically correct jury charge for the case." *Malik v. State*, 953 S.W.2d 234, 240 (Tex.Crim.App. 1997). And, since a "hypothetically correct jury charge" does not mandate proof of intent to cause death, *see Villatoro v. State*, 897 S.W.2d at 945 (delineating the elements of aggravated assault), the State was not obligated to prove same.

2. Although appellant suggests that the witness' testimony is incredible, the matter of credibility was for the jury to determine.

### Point of Error Three

Appellant next alleges that the *State* erred in referring to him as a gang member throughout the trial. The error is reversible, he continues, because gang membership "was not supported by the evidence," "was completely irrelevant," and was inherently prejudicial. We disagree and overrule the point since it was waived below.

■ To the extent that occasional objection may have been made to reference of gang membership, there were many times when no objection was uttered. Moreover, appellant had not sought or obtained a continuing or running objection to such evidence. Thus, he had to object to same each time it was presented to preserve error. *Ethington v. State*, 819 S.W.2d 854, 858 (Tex. Crim.App.1991) (en banc). Having failed to continually object, his complaint regarding the admission of the evidence was waived.[3]

### Point of Error Four

Appellant's fourth point of error involves the admission of an extraneous offense into evidence. That is, the court should have denied the State opportunity to show that he struck a pedestrian with a motor vehicle and then left the scene. We overrule the point.

■ Evidence of an accused's prior crimes and bad acts is admissible during the punishment phase of the trial. Tex.Code Crim. Proc. Ann. art. 37.07, § 3(a) (Vernon Supp.1997); *Baber v. State*, 931 S.W.2d 359, 363 (Tex.App.—Amarillo 1996, pet. ref'd). The extraneous offense complained of consisted of testimony that appellant struck Oscar Martinez with a motor vehicle. Rather than stop, and after voicing the opinion that he thought he had just hit someone, appellant merely drove on to a package store to buy beer. This illustrates his involvement in a "hit-and-run." Furthermore, not only is same a bad act, it is also a crime. Tex. Transp. Code Ann. § 550.021(c) (Vernon

Pamph.1997). Thus, the evidence was admissible.

### Point of Error Five

■ In his fifth point of error, appellant states that the court erred in allowing into evidence a threat made by his brother to a police officer. We overrule the point because it was not sufficiently preserved. Appellant did not object to its admission, and in absence of an objection, the matter was waived. *Ethington v. State*, 819 S.W.2d at 858.

### Point of Error Six

■ Appellant next complains that the trial court erred in admitting into evidence a videotape of a news broadcast concerning the case. The objection made at trial involved hearsay.[4] That is, he thought that the reporter's commentary regarding the incident was nothing less than an out of court statement offered for the truth of the matter asserted. Additionally, the matter asserted concerned appellant's relationship with a gang. However, he did not object to the admission of his own monologue about the shooting which also appeared on the tape. The court overruled the objection and admitted the tape. Assuming that the court's decision was erroneous, we find the act harmless.

Upon hearing the tape, one discovers that the reporter simply recapitulated the events in question. More importantly, the substance of her comments comported with other testimony admitted into evidence without objection. For instance, to the extent that she described the shooting, so did other witnesses. To the extent that she described the actors, others did as well. To the extent that she described the motivations involved, so did others. And, to the extent that she raised the specter of gang involvement, so did others.[5] In effect, the purported hearsay

---

3. That the court may have granted a motion in limine *vis-a-vis* the topic did not fill the void. A motion in limine is not a substitute for an objection. *Gilchrest v. State*, 904 S.W.2d 935, 938 (Tex.App.—Amarillo 1995, no pet.).

4. Before us, appellant asserts various other grounds upon which the tape should have been

excluded. However, none were mentioned below. Thus, they were waived.

5. Indeed, one of appellant's brothers testified about appellant's membership in a gang while another brother spoke of the victim's membership in a rival gang. Thus, appellant is mistaken

was redundant of other evidence. Thus, its admission was harmless, and the point is overruled. *See Penry v. State,* 903 S.W.2d 715, 761 (Tex.Crim.App.), *cert. denied,* —— U.S. ——, 116 S.Ct. 480, 133 L.Ed.2d 408 (1995) (holding that any error in the admission of evidence is harmless when like evidence was presented to the jury through other means); *Johnson v. State,* 803 S.W.2d 272, 291 (Tex.Crim.App.1990), *cert. denied,* 501 U.S. 1259, 111 S.Ct. 2914, 115 L.Ed.2d 1078 (1991) (holding that error in allowing inadmissible evidence is cured when the same evidence comes in without objection elsewhere at trial).

### Point of Error Seven

█ In his seventh point of error, appellant complains that he was not allowed to testify in his own behalf, in violation of article I, section 10 of the Texas Constitution. Nothing of record suggests, much less supports the proposition that, appellant desired but was denied the opportunity to testify. Furthermore, his assertions through his appellate brief do not fill the void since comments in appellate briefs are not evidence. *Davila v. State,* 651 S.W.2d 797, 799 (Tex. Crim.App.1983). Appellant having thus failed to illustrate that the matter was ever raised below, we overrule the point.

### Points of Error Eight and Ten

█ In points of error eight and ten, appellant contends that he was denied effective assistance of counsel. The conduct evincing such ineffectiveness involved counsel's 1) permitting the case to be tried as a gang warfare case without evidence that appellant was a gang member, 2) failing to have pre-trial motions heard, 3) failing to object to improper jury argument regarding gang af-

filiation, 4) failing to object to testimony about a threat Juan made to a police officer, 5) failing to allow appellant to testify, 6) failing to seek a limiting instruction regarding "the offenses" of Juan and Austin, and 7) "offering a tainted witness." We overrule the points for several reasons.

First, other than explaining the applicable standard of review, appellant does not develop his arguments. Rather, he simply concludes that the foregoing acts constitute ineffective assistance.[6] We are left to speculate as to the reasons why. As held by the Court of Criminal Appeals, an appellant must include argument and authority within his point of error before an appellate court is obligated to consider it. *Penry v. State,* 903 S.W.2d at 727.[7] Because appellant did not, the point was insufficiently briefed.

Second, it must be remembered that the resolution of any dispute regarding the effectiveness of counsel begins with the presumption that counsel was effective. *Jackson v. State,* 877 S.W.2d 768, 771 (Tex.Crim.App. 1994), *quoting, Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Not only does this mean that we assume his actions and decisions were reasonably professional but also that they were motivated by sound trial strategy. *Id.* Thus, it is incumbent upon the appellant to rebut these presumptions by establishing 1) that counsel's performance was so deficient that he failed to function as the type of counsel guaranteed by the Bill of Rights and 2) that the failure prejudiced appellant. *Id.; Villatoro v. State,* 897 S.W.2d at 946. Among other things, this entails the presentation of evidence illustrating why trial counsel did what he did. *Jackson v. State,* 877 S.W.2d at 771 (refusing to hold counsel's performance deficient given the absence of evidence con-

in suggesting that no one proved he was a gang member.

**6.** For instance, as to the allegation that counsel should be faulted since "[p]re-trial motions [were] filed but not heard," why those pretrial motions (which he failed to delineate) were important goes unmentioned. Similarly unmentioned is discussion regarding the viability of those motions. At the very least, these topics should have been addressed as should have the substance of his other complaints.

**7.** The new rules of appellate procedure require "clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX R.APP. P. 38.1(h). At a minimum, this too would obligate the party to present authority and argument sufficient to explain *why* the purported error is error. Mere conclusions would still be inadequate.

cerning counsel's reasons for choosing the course he did); *Davis v. State,* 930 S.W.2d 765, 769 (Tex.App.—Houston [1st Dist.] 1996, pet. ref'd). For instance, if counsel did not object to a particular piece of evidence then it is assumed that he had a legitimate reason for not doing so. Moreover, his client has to show otherwise.

Here, appellant refers us to nothing which explains, in any manner, why his attorney acted as he did. Nor does our own perusal of the record disclose any. This is most troubling because we are left to guess at counsel's possible stratagems. For instance, it is arguable that he opted to try the case "as a gang warfare case," as appellant suggests, because it would facilitate appellant's allegation that he was merely defending himself and his brother from a rival gang member's aggression. Nevertheless, we are left to speculate here just as we are *vis-a-vis* every other supposed instance of attorney failure in this case. It may be that counsel had no reason for withholding objection to argument or not requesting a jury instruction. Or, it may be that he had a legitimate basis for doing so, which reason depends upon information not in the record.

Indeed, it is reasonable to conclude that trial counsel, like most every trial counsel, knew more about this case, its players, and its undercurrents than appears in the record. That data, along with other general intangible information such as jury attitude, witness demeanor, and the feel of the trial, could well have influenced a particular decision or course of action. Yet, we have none of that in front of us. Instead, appellant wants us to turn to a cold record and utilize hindsight in the form of querying about what some "reasonably competent attorney" would have done under circumstances about which we may not know. And, should we partake in the guessing games and conclude that counsel was deficient, then we have potentially condemned counsel *vis-a-vis* future grievance proceedings or malpractice actions which the

disgruntled client may initiate, all without affording him the basic opportunity to defend himself before condemnation. These may be the very reasons why the Texas Court of Criminal Appeals rejected the invitation, in *Jackson,* to speculate in matters of ineffective assistance. They are, however, the reasons why we choose not to speculate, and, instead, overrule points eight and ten.[8]

### Point of Error Nine

 Finally, we turn to appellant's complaint about the admission of evidence concerning his brother's plea of guilty in an independent criminal proceeding. The record discloses that the State was permitted to ask Austin whether he had pled guilty to the charge that he was a party to this crime. Because Austin was placed on deferred adjudication, any reference to the "conviction" was irrelevant under Texas Rules of Criminal Evidence 401 and 402 or too prejudicial under Rule 403, according to appellant. We overrule the point for two reasons.

First, at trial, appellant argued that the information should be excluded because no conviction had resulted and, thus, the evidence could not properly be used to *impeach.* The latter ground implicates Rule 609 (impeachment by evidence of a prior conviction), not Rules 401 through 403 regarding relevancy and prejudice. And, because the grounds alleged below for excluding the evidence do not comport with those proffered here, the complaint was waived. *Santellan v. State,* 939 S.W.2d 155, 171 (Tex.Crim.App.1997) (en banc); *See Montgomery v. State,* 810 S.W.2d 372, 388 (Tex.Crim.App.1991) (holding that exclusion based upon Rule 403 must be expressly raised at trial before it can be considered on appeal).

Second, while testifying on direct and cross-examination, Austin endeavored to create the impression that neither he nor his brother assaulted Lira. This opened the door for the State to present evidence indicating

---

8. We caution to warn that our decision hardly sounds the death nell for claims of unreasonable performance. The evidence missing here can, at the very least, be developed in a later hearing upon an application for habeas relief. Or, like in other cases which have appeared on this court's docket, it may be possible to develop the necessary data through a motion for new trial. We merely hold that evidence of counsel's motivations should be contained in the record before we are asked to critique them.

that the impression created was false. It did so by having Austin admit that he actually "pled guilty to this offense." Having himself pled guilty to assaulting Lira tends to contradict the notion that no one committed a crime. More importantly, the avenue taken by the State, once appellant opened the door, was proper. *Rogers v. State,* 815 S.W.2d 811, 816 (Tex.App.—Amarillo 1991, no pet.).

Accordingly, we affirm the judgment entered below.