NO. 07-03-0044-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL E

DECEMBER 1, 2003

_____

EARL F. CURRIE, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE 364TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2002-439099; HONORABLE BRADLEY S. UNDERWOOD, JUDGE

_____

Before QUINN and REAVIS, JJ., and BOYD, S.J.[1]

**Memorandum Opinion**

Appellant Earl F. Currie presents two issues which, he argues, require reversal of
his conviction of attempted aggravated sexual assault and the resulting jury-assessed
punishment of 20 years confinement in the Institutional Division of the Department of

---

[1]John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment.
Tex. Gov't Code Ann. §75.002(a)(1) (Vernon Supp. 2004).

Criminal Justice and a $10,000 fine. In his issues, he asserts 1) the evidence is legally and factually insufficient to support the jury's verdict, and 2) his trial counsel was ineffective in failing to challenge or strike three prospective jurors during *voir dire* examination of the jury panel. Disagreeing that reversal is required, we affirm the judgment of the trial court.

In evaluating the legal sufficiency of the evidence, we must view the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. In doing so, although our analysis considers all the evidence presented at trial, we may not re-weigh the evidence and substitute our judgment for that of the jury. *King v. State*, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000). In reviewing a factual sufficiency challenge, we ask whether a neutral review of all the evidence, both for and against the finding, demonstrates that the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof. *Id.* at 563. In conducting this analysis, we may disagree with the jury's determination, even if probative evidence supports the verdict, but we must avoid substituting our judgment for that of the jury. *Id.; see also Clewis v. State*, 922 S.W.2d 126, 133 (Tex. Crim. App. 1996).

A person commits attempted aggravated sexual assault if, with the intent to commit sexual assault, he "does an act amounting to more than mere preparation that tends but fails to effect the commission" of aggravated sexual assault. *See* Tex. Pen. Code Ann. §15.01(a) (Vernon 2003). A person commits aggravated sexual assault if he intentionally or knowingly "causes the penetration of the anus or female sexual organ of another person

2

by any means, without that person's consent." Tex. Pen. Code Ann. § 22.021(a)(1) (Vernon 2003). The offense is aggravated if the victim is 65 years of age or older. *Id.* § 22.021(a)(2)(C).

Disposition of appellant's first issue requires us to review the pertinent evidence in this case. It shows that appellant was employed as a certified nurse's aide at the Bender Terrace Nursing Home in Lubbock. He was assigned to the 400 hall which was designated for bedridden patients who were unable to care for themselves. Mary, the 74-year-old victim, was confined to that area because of the ravages of Alzheimer's disease. She was unable to speak with the exception of making some grunting sounds, she was incontinent, and she lacked mobility in all of her body with the exception of some very limited movement in her hands. On January 30, 2002, the date of the occurrence in question, appellant was working the same shift with Wynette Sanders, a team leader of the 200 hall, adjacent to the 400 hall.

At the time in question, appellant's fellow employee Sanders was looking for appellant to give him a bedpan for one of his patients. The residents' doors were ordinarily kept open; however, they were closed when a resident was being attended to. Sanders was looking for a closed door, assuming that appellant was taking care of a patient. Noting that the door to the victim's room was closed, Sanders opened the door. As she did so, she noticed that the room was dark. She averred that she saw appellant on top of the victim between the victim's legs and facing her. Although in a prior written statement to the police, Sanders had said she would not "swear" that appellant's pants were down, at trial she was adamant that they were "halfway down his butt." Additionally, in her earlier

3

statement, Sanders said she asked appellant twice what he was doing, although at trial she averred she asked him three times, before he replied "[n]ot a damn thing." During that time, he did not change his position.

Later that night, appellant gave a statement to Michael Kral, the police officer investigating the incident. In the statement, and in relevant part, appellant said:

> When I walked into the room the light was off. I went in there and turned on the light and she was awake. She told me that she was wet. She is hard to understand. I started to change her from one side to the other but she would not turn. I got on the bed and pulled the diaper under her back. About the time Wynette opened the door and said what was I doing, and I said I was doing my job. I finished putting the diaper on her and turned the light out and closed the door behind me . . . .

After the officer took the statement, and in view of the fact that appellant contended the victim had told him she was wet when others told him she was not verbal, Kral continued the investigation.

Later, on February 4, 2002, appellant gave another statement. In relevant part, he said:

> I also wanted to state that when I was changing [Mary,] I was not wearing any gloves. I was in a hurry so I did not put any on. I wiped her vaginal area and her buttocks with a face cloth. I did this before I put a new diaper on her. When I was doing this I was on the floor. I remember having an [sic] hard on. I was thinking of my wife at the time. I then got onto the bed to change [Mary] . . . . Det. Kral asked me if I had kissed [Mary], and I told him that earlier that day, I had kissed her just next to the mouth kind of on the side . . . .

4

Mary was taken to the hospital but, because of the immobility of her legs, the examining physician was not able to determine if there was any sperm present or that penetration had taken place. The victim's husband testified that he was present at the home three times a day to feed and be with his wife. He said she was nonverbal and he found it very difficult to believe she could have told someone she was wet. Appellant did not testify.

It is axiomatic that it is the peculiar province of the jury to assess the credibility of the witnesses and the weight to be given to the evidence. Suffice it to say, we have carefully reviewed the evidence under the guidelines we have set out, and we find it is amply sufficient, both legally and factually, to sustain the verdict of the jury. Appellant's first issue is overruled.

In advancing his second issue, appellant contends his trial counsel did not render him effective assistance during the *voir dire* examination of the jury panel. He specifically complains that three members of the panel displayed a bias against a defendant that did not testify and further demonstrated an inability to consider the full range of punishment assigned to the charged offense. In particular, appellant complains of the failure to challenge venire members Julie Deanne Taylor, David Robert Goyette, and Justin Raul Gonzales, each of whom served on the trial jury.

The panel member responses upon which appellant relies occurred during defense counsel's examination and after he had explained to the panel a defendant's constitutional right not to testify and that his client might or might not exercise that right. The responses appellant singles out are as follows:

5

Venire person Taylor: Just depending on the case. Like you were saying, I mean, there are times that it may not be best, but I may or may not wonder why, you know, he didn't want to defend himself, just depending on how the case goes and what the testimony is.

Mr. Mais: Okay. So if he [the defendant] didn't get up there to testify, that would kind of leave something in the back of your mind?

Venire person Taylor: I would probably just wonder why, but then again, it might be clear as a bell when it came down to it. It's hard to say because depending on what happened in the case and the testimony.

However, immediately following the portion of the colloquy with venire person Taylor cited by appellant, the record reveals the following:

Mr. Mais: Okay. Now, what if the Judge gives you what they call the Court's Charge? In other words, it's kind of like instructions or directions - -

Venire person Taylor: Right.

Mr. Mais: –you know, that this, this or that. Setting your feelings aside, could you just listen to the instructions and follow the instructions or the Court's Charge?

Venire person Taylor: Absolutely.

Appellant also notes the responses of venire persons Goyette and Gonzales as follows:

Venire person Goyette: Well, I respect his right, but I agree with him [venire person Sapieha[2]]; if they're innocent, I would have a problem with him not speaking up.

Venire person Gonzales: I'm with these guys.

---

[2]Venire person Sapieha had commented "I would respect his right [not to testify], but I would question why somebody wouldn't want to defend themselves if they're innocent basically."

None of the venire persons addressed by appellant here were challenged for cause by appellant's trial counsel, nor did he exercise any of appellant's peremptory strikes on them. Venire person Sapieha was peremptorily struck by appellant.

Appellant also points to an initial statement by venire person Gonzales during the State's *voir dire* examination that he could not consider probation in an aggravated sexual assault case. This answer resulted in an additional *voir dire* explanation by the State of the duty to consider the full range of punishment and the necessity to do so to the remainder of the panel. After defense counsel had explained to the panel the necessity for considering the full range of punishment, he did not specifically ask Gonzales if, after the explanations, he could consider the full range. Counsel did close with the comment that "I take it that all of you could consider the full range of punishment."

Under both the federal and state constitutions, a defendant has the right to elect not to testify against himself and the fact that he may do so may not be taken as a circumstance against him. U.S. CONST. amend. V; TEXAS CONST. art. 1, § 10; Tex. Code Crim. Proc. Ann. art. 1.05 (Vernon 1977). The jury was properly instructed on this right as required by article 36.14 of the Code of Criminal Procedure. Tex. Code Crim. Proc. Ann. art. 36.14 (Vernon Supp. 2004). Appellant was eligible for jury-granted probation and had filed an application to be granted probation in the event of his conviction. A venire person who is unable to consider the full range of punishment is subject to challenge for cause. *Chapman v. State*, 838 S.W.2d 574, 578 (Tex. App.–Amarillo 1992, pet. ref'd). Appellant argues that trial counsel should have challenged each of the panel members for cause and, if the challenge was overruled, counsel should

7

have used peremptory challenges on each of them. The failure to do so, he argues, demonstrates ineffective assistance of counsel.

## Standard of Review

The standards for appellate review of ineffective assistance of counsel challenges are by now axiomatic. In *Hernandez v. State*, 988 S.W.2d 770 (Tex. Crim. App. 1999), the court held the test enunciated in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 3052, 80 L.Ed.2d 674 (1984) is applicable in Texas. That test requires that we first ask if counsel's performance was deficient in that he committed serious errors and, if so, whether the outcome of the trial would have differed but for counsel's deficiency. *Id.* 466 U.S. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693; *Rodriguez v. State*, 955 S.W.2d 171, 176-77 (Tex. App.–Amarillo 1997, no pet.).

The burden rests upon the appellant to illustrate by references to the record why both prongs of the test must be answered in the affirmative. *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994); *Rodriguez v. State*, 955 S.W.2d at 176-77. Appellant must also refer us to evidence of record depicting the motives, if any, underlying the actions, or lack thereof, questioned by appellant. *Id.* at 176-77. That is required because we presume, unless shown otherwise, that counsel's actions were reasonably professional and motivated by sound trial strategy. *Beck v. State*, 976 S.W.2d 265, 266 (Tex. App.–Amarillo 1998, pet. ref'd). Thus, it is incumbent upon an appellant to rebut the presumptions by establishing 1) counsel's performance was so deficient that it fell below an objective standard of reasonableness, and 2) a probability sufficient to undermine

8

confidence in the outcome existed so that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Rylander v. State,* 101 S.W.3d 107, 110 (Tex. Crim. App. 2003). Additionally, the *Rylander* court further explicated that "trial counsel should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective." *Id.* at 111; *see also Bone v. State*, 77 S.W.2d 828, 836 (Tex. Crim. App. 2002).

The record before us is silent as to trial counsel's motives or trial strategy and whether those motives or trial strategy were unreasonable. Further, there is nothing on the question that, but for counsel's unprofessional errors, if demonstrated, the result of the trial would have been different. Appellant's second issue is overruled.

In sum, both of appellant's issues are overruled and the judgment of the trial court is affirmed.

John T. Boyd
Senior Justice

Do not publish.