# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-19-00556-CR

---

**Cody A. Carpenter, Appellant**

**v.**

**The State of Texas, Appellee**

---

**FROM THE 51ST DISTRICT COURT OF IRION COUNTY**
**NO. CR19-002, THE HONORABLE CARMEN DUSEK, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

Appellant Cody A. Carpenter was convicted of two counts of the second-degree felony offense of aggravated assault with a deadly weapon by threat and sentenced to three years' confinement in the Texas Department of Criminal Justice ("TDCJ") on each count, with the sentences to run concurrently. *See* Tex. Penal Code §§ 22.01(a)(2), .02(a)(2). In his sole issue on appeal, appellant challenges the sufficiency of the evidence supporting his convictions. We will affirm the judgments of the trial court.

## BACKGROUND

On November 20, 2018, Nicholas Crawley, his fiancée Cassidy Thurman, and their four-month-old daughter were traveling on Highway 67 between Barnhart and Mertzon in

Irion County, Texas.[1]  The evening was "dark."  According to Crawley, a darker-colored GMC or Chevrolet four-door pickup truck came around his Jeep and slowed down "real slow."  When the highway expanded from one to two lanes, Crawley attempted to pass the truck, which sped up.  As Crawley was trying to pass the truck, he saw a pistol emerge from the driver's side window and heard "two shots fired off."  Crawley testified that he was "pretty sure" that when the gun emerged, the truck was in the right lane and he was in the left, "beginning to come back around" the truck but still "back behind" it by ten or twelve feet.  Crawley testified that the gun was pointed "up and back" in the direction of his Jeep.  After the shots were fired, Crawley slowed the Jeep while Thurman called the Sheriff's Department.  Crawley and Thurman then briefly sped up to approach the truck and get its license plate number before slowing down again.  A sheriff's deputy eventually pulled the truck over, and Crawley kept driving.  However, officers called Crawley and Thurman back to make a statement.

Thurman's testimony was largely consistent with Crawley's but differed in a few important respects.  Thurman testified that when the truck first passed them, it did so in a non-passing zone and drove into the oncoming lane to go around them.  She also testified that when she and Crawley initially tried unsuccessfully to pass the truck, the road narrowed to a single lane, and they had to get back behind it.  It was only when the road opened to two lanes again that they tried once more to pass and saw the gun.  Thurman testified that the driver of the truck fired "two or three shots."[2]  One of the shots was fired when the gun was "angled back,"

---

[1]  Appellant waived his right to a jury trial.  The facts recited are taken from the testimony and other evidence presented at the trial before the court.

[2]  Thurman testified on cross-examination that she was "clear" there were three shots fired but later stated "two or three," though she "believe[d]" and "remember[ed]" there were three.

but the other two were fired "directly across the highway." Thurman testified that the truck sped up "aggressively" after firing the shots, and though Crawley "sped up to about seventy-five" miles per hour, he "could not catch him." Crawley slowed down but was able to obtain the truck's license plate number when it lowered its speed as it came to a small town.

Deputy Keith Hale with the Irion County Sheriff's Department conducted a traffic stop on the truck. Deputy Hale testified that Crawley's Jeep was "fairly close behind" the truck but pulled to the shoulder when he turned on his lights. Deputy Hale testified that he and another deputy approached the truck with their firearms drawn for officer safety because it was a "dangerous situation." The driver of the truck, whom they identified as appellant, admitted to the officers that he had "fired some shots." Deputy Hale secured a .40 caliber Glock handgun from the truck's center console. He testified that he believed the weapon had a 15-round magazine and contained eleven rounds; another round was in the chamber.

Appellant was *Mirandized* and interviewed at the Sherriff's Office, where he wrote two statements. *See Miranda v. Arizona*, 384 U.S. 436 (1966). In his statements, appellant wrote, in relevant part:

> I, [sic] then pulled my Glock .40 caliber pistol with field point bullets out of the center console and fired two shots out of my driver window with my right hand into the sky directly to my left. Not in front of me or behind me to where the vehicle was tailgate length in position . . . . I didn't fire the gun to hurt or injur[e] any person[]. The gun was fired to simply make the car back off my tail and or pass me and get away from my vehicle.

Appellant also testified at trial, providing a different account from Crawley's and Thurman's. Appellant testified that he passed the Jeep because his truck has "extremely bright headlights," and because he was not one to "ride behind somebody." After he passed the Jeep, it "got on his rear end" and tailgated him. Appellant "fled away" from the Jeep, but, as he characterized it, the

3

Jeep kept coming back and would try to pass him. When the Jeep got so near that appellant could not see its headlights over his truck's tailgate, he rolled down his driver's side window halfway and, holding the gun in his right hand, fired two times straight into the air but "[n]ot toward the vehicle." Appellant testified that he did not try to hit anybody with the shots and that the Jeep was behind him and not to his left when he fired the shots.

The defense also offered the 911 call into evidence. On the call, Thurman provides the following rendition of events:

> There is a brand-new GMC pickup; it's four-door, black . . . . They come [sic] up, and they passed us. They slammed on their brakes, so I slowed down, got in the other lane, went around them. And then they flew around me in the wrong side of the lane, and when I went past them, they stuck their gun out the window and were shooting up in the air . . . . I can't even catch them because they're going so fast.

The trial court found appellant guilty on both counts of aggravated assault with a deadly weapon. Following a hearing on punishment, the court sentenced appellant to three years' confinement in TDCJ on each count and ordered the sentences to run concurrently. Appellant timely filed a notice of appeal, and this appeal followed.

## DISCUSSION

In one issue, appellant challenges the sufficiency of the evidence supporting his convictions for aggravated assault with a deadly weapon. Due process requires that the State prove beyond a reasonable doubt every element of the crime charged. *Jackson v. Virginia*, 443 U.S. 307, 313 (1979); *Lang v. State*, 561 S.W.3d 174, 179 (Tex. Crim. App. 2018). When reviewing the sufficiency of the evidence to support a conviction, we consider all the evidence in the light most favorable to the verdict to determine whether, based on that evidence and the

4

reasonable inferences therefrom, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Braughton v. State*, 569 S.W.3d 592, 607–08 (Tex. Crim. App. 2018); *see Musacchio v. United States*, 577 U.S. 237, 243 (2016); *Johnson v. State*, 560 S.W.3d 224, 226 (Tex. Crim. App. 2018). In our sufficiency review, we consider all the evidence in the record, whether direct or circumstantial, properly or improperly admitted, or submitted by the prosecution or the defense. *Thompson v. State*, 408 S.W.3d 614, 627 (Tex. App.—Austin 2013, no pet.); *see Jenkins v. State*, 493 S.W.3d 583, 599 (Tex. Crim. App. 2016); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We assume that the trier of fact resolved conflicts in the testimony, weighed the evidence, and drew reasonable inferences in a manner that supports the verdict. *Jackson*, 443 U.S. at 318; *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009); *see Braughton*, 569 S.W.3d at 608. We consider only whether the factfinder reached a rational decision. *Arroyo v. State*, 559 S.W.3d 484, 487 (Tex. Crim. App. 2018); *see Morgan v. State*, 501 S.W.3d 84, 89 (Tex. Crim. App. 2016) (observing that reviewing court's role on appeal "is restricted to guarding against the rare occurrence when a fact finder does not act rationally" (quoting *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010))).

The trier of fact is the sole judge of the weight and credibility of the evidence. *See Zuniga v. State*, 551 S.W.3d 729, 733 (Tex. Crim. App. 2018); *Blea v. State*, 483 S.W.3d 29, 33 (Tex. Crim. App. 2016); *see also* Tex. Code Crim. Proc. art 36.13 (explaining that "the jury is the exclusive judge of the facts"). Thus, when performing an evidentiary-sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *Braughton*, 569 S.W.3d at 608; *Arroyo*, 559 S.W.3d at 487; *see Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012) (stating that reviewing court

must not usurp jury's role by "substituting its own judgment for that of the jury"). Instead, we must defer to the factfinder's credibility and weight determinations. *Braughton*, 569 S.W.3d at 608; *Cary v. State*, 507 S.W.3d 750, 757 (Tex. Crim. App. 2016). When the record supports conflicting reasonable inferences, we presume that the factfinder resolved the conflicts in favor of the verdict, and we defer to that resolution. *Zuniga*, 551 S.W.3d at 733; *Cary*, 507 S.W.3d at 757; *see Musacchio*, 577 U.S. at 243 (reaffirming that appellate sufficiency review "does not intrude on the jury's role 'to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts'" (quoting *Jackson*, 443 U.S. at 319)). We must "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015) (quoting *Clayton*, 235 S.W.3d at 778); *accord Arroyo*, 559 S.W.3d at 487.

Because factfinders are permitted to make reasonable inferences, "[i]t is not necessary that the evidence directly proves the defendant's guilt; circumstantial evidence is as probative as direct evidence in establishing the guilt of the actor, and circumstantial evidence alone can be sufficient to establish guilt." *Carrizales v. State*, 414 S.W.3d 737, 742 (Tex. Crim. App. 2013) (citing *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)); *accord Johnson*, 560 S.W.3d at 226. The standard of review is the same for direct- and circumstantial-evidence cases. *Jenkins*, 493 S.W.3d at 599; *Nowlin v. State*, 473 S.W.3d 312, 317 (Tex. Crim. App. 2015).

Under subsection 22.01(a)(2) of the Texas Penal Code, an individual commits assault when he "intentionally or knowingly threatens another with imminent bodily injury."

6

Tex. Penal Code § 22.02(a)(2). The offense is aggravated when the offender "uses or exhibits a deadly weapon during the commission of the assault." *Id.*

Appellant contends that the "crux of the evidentiary matter before" the Court is whether he "intentionally" or "knowingly" threatened Crawley and Thurman or merely acted recklessly. However, he elsewhere contends that "[his] argument is that the [evidence does not] establish beyond a reasonable doubt that he intentionally or knowingly threatened anyone with *imminent bodily injury*." (Emphasis added.)

"The gist of an assault offense is that the defendant 'acts with intent to cause a reasonable apprehension of imminent bodily injury.'" *Fagan v. State*, 362 S.W.3d 796, 798 (Tex. App.—Texarkana 2012, pet. ref'd) (quoting *Dobbins v. State*, 228 S.W.3d 761, 766 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd, untimely filed)). The nature of mental culpability, however, is that it must generally "be inferred from the circumstances under which the prohibited act occurred." *Russo v. State*, 228 S.W.3d 779, 793 (Tex. App.—Austin 2007, pet. ref'd). Intent may be inferred from the acts, words, and conduct of the accused. *Id.* The "crucial inquiry" is whether the assailant "acted in such a manner as would under the circumstances portend an immediate threat of danger to a person of reasonable sensibility." *Olivas v. State*, 203 S.W.3d 341, 347 (Tex. Crim. App. 2006). Whether the assailant actually intended to cause bodily injury is irrelevant. *Robbins v. State*, 145 S.W.3d 306, 314 (Tex. App.—El Paso 2004, pet. ref'd); *see Bell v. State*, 693 S.W.2d 434, 438 (Tex. Crim. App. 1985) (explaining State was required to prove "culpable mental state of intentionally or knowingly in conjunction with the forbidden conduct of *threatening another* with imminent bodily injury" to establish offense).

The Court of Criminal Appeals has defined "imminent" to mean "ready to take place, near at hand, impending, hanging threateningly over one's head, menacingly near."

7

*Garcia v. State*, 367 S.W.3d 683, 689 (Tex. Crim. App. 2012) (quoting *Devine v. State*, 786 S.W.2d 268, 270 (Tex. Crim. App. 1989)). "Threat" can be defined broadly as "[a]n expression of an intention to inflict something harmful" or "[a] declaration of an intention or determination to inflict punishment, injury, etc., in retaliation for, or conditionally upon, some action or course." *Ex parte Perry*, 483 S.W.3d 884, 905 (Tex. Crim. App. 2016). A threat does not need to be verbal; it can be communicated through actions or conduct. *Boston v. State*, 373 S.W.3d 832, 840 (Tex. App.—Austin 2012), *aff'd*, 410 S.W.3d 321 (Tex. Crim. App. 2013). It is not necessary that the intended victim perceive or receive the threat. *Olivas*, 203 S.W.3d at 346. The "question of whether the defendant's conduct produced fear in the victim" is, nevertheless, "relevant." *Id*. at 347.

The evidence presented at trial is sufficient to support the finding of appellant's guilt beyond a reasonable doubt. Crawley testified that appellant aimed the pistol up and back toward Crawley and Thurman, "firing . . . in the direction of the Jeep." Crawley also testified that he was worried for their safety and the safety of their daughter, testifying that it felt like "everybody in that car's li[ves] had been threatened." He explained that although he thought they were "warning shots," "[y]ou would think that . . . the next ones that w[ere] to come would not be." When pressed as to whether appellant was in fact firing at him, Crawley added:

> Regardless of whether he was aiming directly at me or whether he was aiming toward the Jeep or in my general direction, it was still unsafe to do it and put my family and myself in danger . . . . Like I said, it was dark. It could have been in my general direction. For all I know, it could have been at me.

Thurman testified that with respect to one of the shots, "the gun angled back." She testified that she was "scared" and "wasn't sure if [appellant] was trying to shoot [them]," that "everybody's well-being was threatened," and that she felt "like there was urgency to that

8

threat." When asked whether appellant's actions "place[d her] in fear of imminent bodily injury or death for [her], Mr. Crawley and [their] baby," Thurman responded, "Yes, ma'am." When asked if she and Crawley had discussed "the fact that [the shots] might have been warning shots," Thurman explained, "I was always told one shot is always a warning shot. Anything after is a threat."

The Court of Criminal Appeals has acknowledged, "While it is true that the threat must be of imminent infliction of bodily injury or death, it is also true that the display of a deadly weapon of and within itself constitutes a threat of the required imminent harm. *Robinson v. State*, 596 S.W.2d 130, 133 n.7 (Tex. Crim. App. 1980). This Court has also accepted that "[t]he act of pointing a gun at an individual is, by itself, threatening conduct." *Boston*, 373 S.W.3d at 840 (quoting with approval *Fagan*, 362 S.W.3d at 799); *see Rodriguez v. State*, 955 S.W.2d 171, 174 (Tex. App.—Amarillo 1997, no pet.). Consequently, the evidence indicating that appellant aimed the handgun—and possibly fired—at or toward Crawley, Thurman, and their infant is sufficient to support findings that the elements of the offense have been satisfied. A reasonable factfinder could infer the necessary culpable mental state from appellant's acts and conduct. However, such an inference is unnecessary. Appellant himself seemingly conceded at trial that he intended to threaten Crawley and Thurman:

> State: When you fired the shots, you intended to scare them?
>
> Appellant: Yes, ma'am. I was in fear.
>
> State: So you intended—When you displayed and discharged the firearm, you intended to threaten them?
>
> Appellant: Not necessarily threaten them. I just didn't know what their intentions were.

9

State: But what does it mean when you intend to fire off shots—Do you call it warning shots? Do you call it—You say you were just trying to scare them, but what is that but a threat?

Appellant: I mean maybe, yeah.

While it is true that appellant's testimony contradicted the complainants' testimony as to the location of the Jeep, direction of the shots, and angle of the gun, we resolve any inconsistencies in the evidence in favor of the fact-finder's determination. *Bohannan v. State*, 546 S.W.3d 166, 178 (Tex. Crim. App. 2017). "To uphold a conviction for threat," there need only be "*some* evidence of a threat being made." *Schmidt v. State*, 232 S.W.3d 66, 68 (Tex. Crim. App. 2007) (emphasis in original) (citing *Olivas*, 203 S.W.3d at 349); *see also Jones v. State*, 500 S.W.3d 106, 113 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (explaining appellate court "must defer to the jury's resolution of conflicting evidence in the State's favor," and accordingly concluding that there was sufficient evidence from which rational trier of fact could have found defendant guilty beyond reasonable doubt); *Miller v. State*, 741 S.W.2d 501, 503–04 (Tex. App.—Corpus Christi–Edinburg 1987, pet. ref'd) (determining defendant's admission that he fired upwards amounted to a threat to inflict bodily injury by using deadly force).

In the present case, appellant testified that he fired the gun in the air to scare Crawley and Thurman. In his written statements, he explained that he did so to make the Jeep "back off [his] tail and or pass [him] and get away from [his] vehicle." Based on this evidence and reasonable inferences therefrom, a rational trier of fact could find the elements of aggravated assault with a deadly weapon proved beyond a reasonable doubt. We overrule appellant's sole issue.

## CONCLUSION

Having overruled appellant's issue, we affirm the trial court's judgments of conviction.

_____

Melissa Goodwin, Justice

Before Justices Goodwin, Triana, and Smith

Affirmed

Filed:   July 15, 2021

Do Not Publish