**Marcus Bernard THOMPSON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**Nos. 14–96–00073–CR, 14–96–00078–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

July 30, 1998.

Rehearing Overruled Sept. 17, 1998.

---

Jane Colette Disko, Marathon, FL, for appellant.

Eric Kugler, Houston, for appellee.

Before MURPHY, C.J., and HUDSON and CANNON,*JJ.

## OPINION

HUDSON, Justice.

Appellant, Marcus Bernard Thompson, was charged by indictment in cause number 676417 with possession of cocaine weighing less than 28 grams. Thompson entered a plea of guilty and was placed on deferred adjudication. Thereafter, Thompson was charged by indictment in cause number 9413755 with the murder of Michael Wagner.

* Retired Justice Bill Cannon sitting by assignment.

Thompson entered a plea of not guilty and the cause went to trial before a jury. After considering the evidence, a jury found Thompson guilty of murder and assessed his punishment at confinement in the Institutional Division of the Texas Department of Criminal Justice for a term of twenty years. The trial court also adjudicated Thompson's guilt in cause number 676417 and assessed his punishment in that case for a like number of years. In three points of error, Thompson contends: (1) he was denied the effective assistance of counsel; (2) the trial court erred in failing to grant a mistrial; and (3) he was denied a meaningful hearing on the adjudication of guilt. We affirm the court's judgment in the drug case and reverse the murder conviction.

### FACTUAL BACKGROUND OF THE MURDER CASE

On June 8, 1994, Stacy Pierre and his girlfriend, Amanda Williams, went to a dice game at the corner of Fountain and Stassen streets in Harris County, Texas. There were approximately fifteen people, including appellant, present at the game. Pierre joined in the game, but became uncomfortable when a man kept walking behind him. Although Pierre admitted that he often carried a .25 caliber automatic pistol, he testified that on this evening his gun was in the console of his automobile. Rather than arm himself, Pierre asked his friend Michael Wagner, who was also armed with a .25 caliber automatic pistol, to "watch over" him. Wagner sat with Williams in the front seat of Pierre's Thunderbird and watched Pierre continue to lose money in the game.

When Pierre bet his last five dollars, appellant threw the money back at him and told him to get more money. Pierre again attempted to place a five dollar bet, and appellant again threw the money back at him. A fight broke out, and one of the dice players hit Pierre on the forehead. Pierre grabbed the man and began pulling him toward the Thunderbird. As Pierre approached the car, Wagner got out of the vehicle to allow Pierre to get in the backseat. Once Pierre was in the car, Wagner sat down in the front passenger's seat. As Wagner shut the car door,

a 9 mm bullet smashed through the windshield and struck Wagner in the chest. Pierre looked up and saw appellant standing in front of the car holding an "Uzi-type gun."

As Wagner, who was fatally wounded, slumped over in the seat, Pierre told Williams to drive to Wagner's house. When they arrived, Pierre went to the door and asked Wagner's wife to open the burglar bars. He did not tell her that her husband had been wounded, and Wagner's wife refused to open the door. Pierre and Williams then drove further before stopping along the side of the road. Williams checked Wagner's pulse and told Pierre he was dead. Pierre then called his mother Leonora Hordge, and his sister, Lisa Jackson. Jackson met Pierre and Williams, examined Wagner, and determined he was dead. Pierre, Jackson and Williams then drove to Hordge's house. Hordge, a registered nurse, examined Wagner and also determined he was dead. The police were called for the first time, but Pierre left before the police arrived.

Pierre, however, met with the police the next morning. He spoke to police and picked appellant out of a photo array, although not with complete certainty. Thompson was subsequently charged with the murder of Michael Wagner.

### INEFFECTIVE ASSISTANCE OF COUNSEL

In his first point of error, Thompson argues he was denied the effective assistance of counsel because his trial counsel failed "to request an instruction to disregard and move for a mistrial when the prosecutor elicited inadmissible hearsay testimony by non-testifying witnesses." To establish ineffective assistance of counsel during the guilt-innocence phase of trial, we look to the standard established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In order to show ineffective assistance of counsel, appellant must show: (1) his trial counsel's performance was deficient, in that counsel made such serious errors he was not functioning effectively as counsel; and (2) the deficient performance prejudiced the defense to such a degree that the defendant was deprived of a fair trial. *See id.* at 687, 104 S.Ct. 2052; *Hernandez v. State*, 726

S.W.2d 53, 56–57 (Tex.Crim.App.1986) (adopting the two-prong *Strickland* standard in Texas). Whether the *Strickland* standard has been met is judged by the totality of the representation rather than by isolated acts or omissions of trial counsel and the test is applied at the time of the trial, not through hindsight. *See Bridge v. State*, 726 S.W.2d 558, 571 (Tex.Crim.App.1986). The burden of proving ineffective assistance of counsel rests upon the convicted defendant by a preponderance of the evidence. *See Moore v. State*, 694 S.W.2d 528, 531 (Tex.Crim.App. 1985).

Thompson argues that the prosecutor at trial repeatedly attempted to elicit inadmissible hearsay from Sergeant Yanchak. During the direct examination of Sergeant Yanchak, the following exchange took place:

Q. [By Ms. Wayne, the State's attorney]: Did you show the same photo spread to another witness?

A. [By Sergeant Yanchak]: Yes, ma'am.

Q. And did you show that photo spread to a witness by the name of Lenora Choice?

A. Yes, ma'am.

Q. Was she able to—

MR. HODGE: I'm gonna object, Your Honor, it calls for hearsay.

MS. WAYNE: I haven't asked the question yet. And he's allowed to say what it is, in fact, the witness did. We're not asking him to say what she said. It's not hearsay, whether or not she was able to make a positive identification.

THE COURT: Wouldn't that be backdoor hearsay?

MR. HODGE: That's exactly what it is, Judge.

THE COURT: I'll sustain the objection.

The prosecutor attempted to again elicit testimony regarding Ms. Choice's identification from the photo array, and appellant's counsel again objected. The following conference was held at the bench:

MR. HODGE: Your Honor, unless I'm mistaken, I believe you sustained my

objection to her attempt to try to get in the fact that he showed the photo array to someone, and that person may have positively identified my client. She's trying to get the exact same thing. And she's just trying to back door by asking him those questions. And it's exactly the same thing that I'm objecting to.

MS. WAYNE: This is not hearsay. I'm asking this witness—my question before the witness right now is what instructions did he give to this person. *He can say what somebody did. He could say she pointed to this picture and it was a picture of this defendant. He's perfectly allowed to say that.* He just said that about the witness who just testified.[1]

THE COURT: That's true.

\* \* \*

MS. WAYNE: *I'm not asking him to give any testimony about words that came out of this person's mouth, I'm asking him to point or to show what he did. He pointed to a picture and said his name.*

MR. HODGE: It's hearsay.

THE COURT: If a gesture mean an answer it is specifically hearsay unless there's some exception to it, just as language is. Why would it be admissible in this case?

MS. WAYNE: I'm not asking him to testify about anything she said.

THE COURT: Yes, you are.

(Emphasis added). The trial court sustained the objection, but the prosecutor continued with the following questions:

BY MS. WAYNE:

Q. What instructions did you give—what did you tell the witness, Lenora Choice, about the photographs that you were about to show her?

A. If she could positive—if she could identify the defendant or the suspect.

Q. And did you additionally show these photographs to a witness, Amanda Williams?

A. Yes ma'am.

Q. What instructions did you give her?

A. Same instructions.

Q. *And did you continue after—after that—in your investigation?*

A. Ma'am?

Q. *Did you continue your investigation, following that?*

A. *Yes, ma'am.*

Q. *Were there any other suspects that you investigated?*

A. *No, ma'am.*

Q. *Did any information come to you to make you believe that there were any other suspects in this case?*

A. *No, ma'am.*

(Emphasis added). Thompson argues this testimony left the jurors with the clear impression that the non-testifying witnesses—Williams and Choice—had identified appellant, and therefore constituted "backdoor" hearsay.

■ The State contends the testimony was offered to "show the effect of the [photo lineup identifications] on Sergeant Yanchak's investigation of the murder." The State also argues that no hearsay violation occurred because no "statement" was offered into evidence. Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Tex. R.Crim. Evid. 801(d); *Schaffer v. State,* 777 S.W.2d 111, 115 (Tex.Crim.App.1989). Hearsay may not be introduced directly or by inference. *See Schaffer,* 777 S.W.2d at 114–115. "Where there is an inescapable conclusion that a piece of evidence is being offered to prove statements made outside the courtroom, a party may not circumvent the hearsay prohibition through artful questioning designed to elicit hearsay indirectly." *Id.* at 114. Here, Yanchak's testimony that he did not investigate any other suspects after the photo array was shown to Williams and Choice is indirect proof that these two witnesses positively identified appellant. Thus,

---

1. Yanchak had testified a short time earlier that Stacy Pierre had identified appellant in the same photo array.

the testimony constituted hearsay. *See Burks v. State,* 876 S.W.2d 877, 897–98.(Tex. Crim.App.1994) (prosecutor's attempt to indirectly elicit testimony that police officer got a description of the defendant from a particular witness was inadmissible hearsay); *Gilbert v. State,* 874 S.W.2d 290, 295 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd) (recognizing that "backdoor" hearsay is subject to the same rules and limitations as the classic form of hearsay).[2]

■ Although appellant's counsel repeatedly objected to the hearsay identification, the State's attorney pursued her course with relentless determination. Ultimately, the hearsay was admitted without objection. A lawyer may well choose not to object to hearsay or other inadmissible evidence if it potentially enhances his client's defense or at least does not seriously prejudice it. Such is not the case here, however.

The only evidence offered to show appellant killed the complainant was the testimony of Stacy Pierre. His initial identification of Thompson in the photo spread was tentative. While his identification at trial was more positive, Pierre was heavily impeached by both his conduct and the physical evidence. First, Pierre did not seek medical attention for his friend, but drove around for several hours with Wagner's dead body in the car. Second, when the police were finally summoned, Pierre did not wait for their arrival. Third, Pierre denied that he or Wagner ever fired a gun, and he emphatically stated that he heard only one shot—the shot fired by Thompson. The police, however, recovered one .25 caliber casing on the floor of Pierre's Thunderbird which had apparently been ejected after firing a .25 caliber automatic pistol. An unfired .25 caliber round was also found on the ground at the scene of the murder. Accordingly, we find counsel's failure to object fell below an objective standard of reasonableness, and the first prong of *Strickland* is satisfied.

■ Turning to the harm prong of the test, we must ask whether there is a reasonable probability that, but for counsel's unpro-

fessional errors, the result of the proceedings would have been different. *See Strickland,* 466 U.S. at 687, 104 S.Ct. 2052. As we have already mentioned, when the hearsay evidence is disregarded, the remaining evidence against appellant is weak. Moreover, the record demonstrates that by her use of hearsay, the prosecutor succeeded in persuading at least some members of the jury that two witnesses had identified Thompson as the murderer. The jury foreman sent out the following note: "We need testimony of Officer [Yanchak] who said that there was [sic] two other people who identified Marcus Thompson." If the inadmissible hearsay had been excluded, we believe the result of the proceedings might have been different. Appellant's first point of error is sustained.

### JURY MISCONDUCT

■ In his second point of error, Thompson contends the trial court erred in failing to grant a mistrial when the jury considered inadmissible hearsay during their deliberations. However, where no objection is raised to hearsay, the trier of fact may consider the hearsay in the same manner as all other evidence. *See Chambers v. State,* 711 S.W.2d 240, 247 (Tex.Crim.App.1986). The jury did not err in considering the hearsay. Accordingly, the trial court did not err in failing to grant a mistrial, and appellant's second point of error is overruled.

### MEANINGFUL ADJUDICATION HEARING

In his final point of error, Thompson contends he was denied a meaningful hearing on his adjudication of guilt in cause number 676417. Following his conviction for murder in cause 9413755, the State moved to adjudicate appellant's guilt on a previous drug offense. A brief hearing was held four days following appellant's murder trial and the trial court sentenced appellant to twenty years in the Institutional Division of the Texas Department of Criminal Justice, to run concurrently with the murder sentence. Appellant in his final point of error argues that

**2.** *But see Yancey v. State,* 850 S.W.2d 642, 644 (Tex.App.-Corpus Christi 1993, no pet.) (holding that mere suggestion of what another person might have said is not "proof" of same and, therefore, is not hearsay because it is not "a statement").

the hearing held by the trial court did not comport with the minimum requirements of due process.

■ Article 42.12 of the Texas Code of Criminal Procedure provides that a criminal defendant is entitled to a hearing on his adjudication of guilt. *See* Tex.Code Crim. Proc. Ann. art. 42.12(21)(b) (Vernon Supp. 1998). The United States Supreme Court has enunciated the "minimum requirements of due process" that must be observed in probation revocation hearings. *See Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). These requirements include: (1) written notice of the claimed violations of probation; (2) disclosure to the probationer of the evidence against him; (3) the opportunity to be heard in person, and by counsel, and to present witnesses; (4) the right to confront and cross-examine adverse witnesses; (5) a "neutral and detached" hearing body; and (6) a written statement by the factfinder as to the evidence relied on and the reasons for revoking probation. *See Morrissey,* 408 U.S. at 487, 92 S.Ct. 2593; *see also Ruedas v. State,* 586 S.W.2d 520, 523 (Tex.Crim.App.1979).

■ These six requirements have been met in the instant case. First, the state's motion to revoke probation provided Thompson with written notice of the claimed violations of probation. Second, at the hearing on the State's motion, the following exchange took place:

THE COURT: *I heard the testimony in the trial the other day.* The State has marked what's marked as State's Exhibit Number 27. It's a written Stipulation of Evidence that's been signed by the defendant and his attorney.

MR. HODGE: Well, we have no objection to the written stipulation, Your Honor.

THE COURT: Well, State's Exhibit 27 is admitted, in the adjudication hearing in Cause Number 676, 417.

THE COURT: Anything further?

MS. WAYNE: With that, *and the evidence that was carried in Cause Number 94–13755,* the State rests and closes on the Motion to Adjudicate.

MR. HODGE: Same for the Defense, Your Honor.

THE COURT: Both sides having rested and closed on evidence, I find you guilty of the offense in Cause Number, of course, 676,417.

The reference to Thompson's murder trial was sufficient to apprize him of the evidence against him. Third, the trial court gave Thompson and his counsel the opportunity to be heard and present witnesses; both Thompson and his counsel turned down this opportunity. Fourth, Thompson and his counsel cross-examined all adverse witnesses at the murder trial and no adverse witnesses were presented at the hearing on the adjudication of guilt. Fifth, the trial court was a neutral and detached hearing body. Finally, the Judgment Adjudicating Guilt states: "Defendant did then and there violate terms and conditions by committing offense [sic] of murder against the laws of the State of TX." This statement is sufficient to satisfy the sixth requirement under *Morrissey.* Thompson was provided a meaningful hearing on his adjudication of guilt. Point of error number three is overruled.

The trial court's judgment in cause number 9413755 is reversed and remanded for a new trial. The trial court's judgment in cause number 676417 is affirmed.