James Paul WHITE, Appellant,

v.

The STATE of Texas, Appellee.

No. 07–98–0122–CR.

Court of Appeals of Texas,
Amarillo.

Sept. 1, 1999.

Terry M. Casey, Casey & Colosi, Fort Worth, for appellant.

Tim Curry, Dist. Atty., Charles M. Mallin, Danielle A. LeGault, Betty Arvin, Asst. Dist. Attys., Fort Worth, for appellee.

Before QUINN and REAVIS and JOHNSON, JJ.

BRIAN QUINN, Justice.

James Paul White challenges his conviction for aggravated sexual assault with a deadly weapon and sentence of 30 years imprisonment. The issues he asserts on appeal can be divided into two categories. The first entails the effectiveness of his counsel during both the guilt/innocence and punishment phases of the trial, while the second concerns the absence of an instruction defining reasonable doubt in the jury charge submitted during the punishment phase. We affirm.

### Background

The evidence of record illustrates that appellant's victim was hitchhiking when he offered her a ride, which she accepted. Rather than take her to her destination, appellant drove to a secluded area, parked, placed a box cutter containing a razor blade against her throat, forced her to engage in oral sex, inserted his finger into her vagina, severely beat her, broke one of her fingers, and cut portions of her clothes off. After finding him guilty of aggravated sexual assault with a deadly weapon, the jurors heard evidence of other crimes he committed such as assaulting another female and driving while intoxicated. Subsequently, they assessed punishment at 30 years imprisonment, despite appellant's request for probation.

### I. Ineffective Assistance of Counsel

Appellant contends that he was denied effective assistance of counsel in both the guilt/innocence and punishment phases of the trial. We disagree and reject the argument.

#### a. Standard of Review

■ We will consider each instance of purported ineffectiveness but address the applicable standard of review first. That standard no longer distinguishes between error arising during the guilt/innocence and punishment phases of the trial. With *Hernandez v. State*, 988 S.W.2d 770 (Tex. Crim.App.1999), the Texas Court of Criminal Appeals held that the test enunciated in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), applies to each phase. Pursuant to *Strickland*, we assess claims of ineffectiveness by first asking if counsel's performance was deficient in that he committed serious errors, and if so, whether the outcome of the trial would have differed but for counsel's deficiency. *Id.* at 466 U.S. at 687, 104 S.Ct. at 2068, 80 L.Ed.2d at 693; *Rodriguez v. State*, 955 S.W.2d 171, 176–77 (Tex. App.—Amarillo 1997, no pet.).

■ The burden lies with the appellant to illustrate, via reference to evidence appearing of record, why both prongs of the test must be answered in the affirmative. *Jackson v. State*, 877 S.W.2d 768,

771 (Tex.Crim.App.1994); *Rodriguez v. State*, 955 S.W.2d at 176–77. So too must appellant refer us to evidence of record depicting the motives, if any, underlying the actions undertaken by counsel and questioned by appellant. *Beck v. State*, 976 S.W.2d 265, 266 (Tex.App.—Amarillo 1998, pet. ref'd); *Rodriguez v. State*, 955 S.W.2d at 176–77. This is so because we presume, until shown otherwise, that those actions were reasonably professional and motivated by sound trial strategy. *Jackson v. State*, 877 S.W.2d at 771 (Tex.Crim. App.1994); *Beck v. State*, 976 S.W.2d at 266. Should such evidence be absent, then we lack adequate basis upon which to sustain appellant's complaint.

*b. Application of Standard to Allegations*

*1. Failure to Question Venire*

■ Initially, appellant asserts that counsel was ineffective due to his failure to ask members of the jury venire 1) whether they or any of their relatives had been victims of a sexual assault, 2) if so, whether they would be influenced by it, and 3) whether they could consider the full range of punishment, including probation. We disagree for several reasons.

First, the record is without evidence of counsel's motive, if any, regarding why he did not delve into those areas. Again, before we can disregard the presumption that counsel acted pursuant to reasonable trial strategy, evidence of his motive must appear of record. *Jackson v. State, supra; Rodriguez v. State, supra.* Because no such evidence appears here, the presumption is not rebutted.

Second, appellant cites us to no authority requiring counsel to delve into the areas in question to be effective. To now say that counsel was ineffective by failing to pose the questions suggested by appellant would be to make those questions a requirement in future trials. We lack the inclination and authority to do so and thereby micro-manage the performance of counsel. *See Beck v.* State, 976 S.W.2d at 267 (holding that attorneys are not required to ask potential jurors about their possible racial biases in order to be effective).

Third, the State addressed the venire about the full range of punishment, which included an explanation of probation and asking if the members of the panel could consider the full range of punishment, including probation. The topic having been broached and explored by others, defense counsel need not traverse those territories to be effective. *See Beck v. State*, 976 S.W.2d at 267 (counsel was not deficient for failing to voir dire on punishment when the court had already asked the venire if anyone could not consider the full range).

Finally, comments made during the voir dire illustrate that information about prior exposure to criminal activity was requested via the questionnaires completed by the potential jurors.[1] Furthermore, one prospective juror revealed that a relative had been a victim of crime. Given this, we again choose not to find counsel deficient simply because he did not investigate a matter already developed through other means. Nor do we care to do so when nothing of record indicates that any other potential jurors had been victims of criminal activity and would be influenced by that experience. In sum, we cannot divine prejudice from the failure to do something which may have been inconsequential given the state of the record.

*2. Hagerman Crime Scene*

■ Appellant characterizes his attorney as ineffective for failing to object to a statement by a witness involving an allusion to a place where a female, Amber

1. The actual questionnaires do not appear in the record.

Hagerman, had previously been abducted and subsequently killed by an unknown person. According to appellant, his counsel's silence allowed the jury to somehow attribute that crime to appellant, which in turn rendered counsel's performance deficient. We disagree for several reasons.

First, the record again lacks all evidence indicating the motive, if any, under which counsel acted. That proves fatal under *Rodriguez* and *Beck.*

Second, and more importantly, no evidence supports the allegation. Save for the commentary asserted in appellant's brief, nothing in this record establishes the existence of an Amber Hagerman incident or its purportedly scandalous significance. Alleged facts appearing for the first time in an appellate brief are not competent evidence which we can consider. *Santacruz v. State,* 963 S.W.2d 194, 197 (Tex. App.—Amarillo 1998, pet. ref'd). Thus, appellant's commentary in his brief cannot be used to support his contention, and we have no factual basis upon which to act.

### 3. Hearsay Evidence Regarding License Number

■ Appellant next alleges that trial counsel was ineffective because he did not object to hearsay regarding the "tracing of the assailant's license plate number to appellant." The supposed hearsay involved a detective testifying, without objection, "that he received information that the license plate was registered to a vehicle owned by appellant and was provided with appellant's address." Furthermore, the omission was harmful because it served to "link" appellant to the crime. We again disagree.

As before, nothing of record evinces the motives, if any, which counsel may have acted upon in remaining silent. Thus, we must presume that reasonable trial strategy induced his silence. And, even if no

such motive existed, we would be unable to conclude that the omission had any effect upon the outcome of the trial. Appellant's victim twice identified him as the assailant, once in a photo array and once in court. This eyewitness testimony of a "link" between appellant and the assailant being of record precludes us from holding that but for counsel's silence the outcome would have differed.

### 4. Ateek's Testimony

■ Counsel was also supposedly ineffective because he did not object to the testimony of probation officer Stefan Ateek. The witness was initially called by trial counsel to speak about the programs available to a sex offender on probation. However, during cross-examination the prosecution asked the witness about the general propensities of sex offenders. Despite objection by counsel (which objection was overruled), appellant castigates his attorney for not uttering further objections based upon the witness's expertise or lack thereof, which failure supposedly deprived him of reasonable counsel. We again disagree.

Nothing appears of record evincing counsel's motives underlying his action. Indeed, it could well be that he believed further objections would have made him look unduly obstinate in the eyes of the jury, especially since the court had already overruled his initial objection. Nevertheless, the state of the record allows us to do nothing other than speculate about why he did what he did, which we cannot do. So, appellant failed to rebut the presumption that his counsel acted pursuant to reasonable trial strategy.

In addition, appellant's brief lacks illustration that the witness's testimony was legally objectionable. He merely posits that Ateek's comments "appeared to be grossly outside ... [his] expertise...." Yet, to be effective, trial counsel is not

obligated to object merely to object. Before it can be said that the absence of objection constituted prejudicial behavior, it would be incumbent upon appellant to illustrate the testimony was subject to exclusion via a legitimate objection. Appellant does not satisfy this requirement by simply saying that it "appeared" that Ateek lacked the requisite expertise to speak on the subjects raised. Simply put, we are unable to conclude that counsel erred in failing to object to Ateek's qualifications when appellant himself makes no attempt to establish that the witness was indeed unqualified and that the objection desired had merit.

### 5. Evidence of DWI

■ Counsel is here categorized as ineffective because he "opened the door for the state to prove up an arrest for a pending felony driving while intoxicated offense." Counsel called appellant's mother as a witness and asked her if her son had been arrested for anything in the past two years. She responded in the negative. On cross, the prosecutor proceeded to question her about a pending "repetition DWI offense." Allegedly, the offense could not have been broached but for counsel's action, since the State had not previously notified appellant about its intent to mention it. *See* TEX.CODE CRIM. PROC. ANN. art. 37.07, § (3)(g) (Vernon Supp.1999) (requiring the State to provide prior notice of its intent to offer evidence of unadjudicated extraneous offenses during the punishment phase). In opening the door, counsel allegedly evinced either his lack of acquaintance with the facts of his case or utterly lacked all reasonable trial strategy. His performance was thus unacceptable, according to appellant. We again disagree.

As with every other purported defect urged, the record is again void of evidence of counsel's motive, if any. Without it, we have no basis upon which to jettison the controlling presumption. Moreover, we can easily divine a legitimate basis for asking the question. It is not unthinkable to urge a jury to grant probation by proving the accused had never been arrested before. This suggests that appellant had not committed bad acts before, and who better to give probation to than one who seldom errs (or so goes the theme). Yet, whether this reasonable stratagem motivated counsel to ask the question he did is only speculation in which we cannot engage. *Jackson v. State, supra; Rodriguez v. State, supra.*

As to the insinuation that counsel failed to fully acquaint himself with the circumstances of the case and history of appellant, we view that proposition to also be mere speculation. The record does not depict the extent, if any, of counsel's investigation and preparation. He may have been "shooting from the hip" when posing the question to appellant's mother or it may be that he investigated the matter of prior arrests and obtained incorrect information. *See Ex parte Ewing,* 570 S.W.2d 941, 947 (Tex.Crim.App.1978) (holding that justifiable reliance by counsel upon the misrepresentations of his client cannot be the basis for a claim of ineffective assistance); *Baber v. State,* 931 S.W.2d 359, 361 (Tex.App.—Amarillo 1996, pet. ref'd) (stating that when the facts that support a certain potential line of defense are generally known to counsel because of what the defendant said, the need for further investigation may be considerably diminished or eliminated altogether). Because neither hypothesis enjoys support by anything other than speculation, we are unable to hold that counsel neglected to sufficiently acquaint himself with the circumstances surrounding the case and his client.

### 6. Suggesting 180 Days of Incarceration

■ Finally, counsel was allegedly ineffective because he suggested that the jury incarcerate him for 180 days as part

of his probation when it instead ultimately assessed 30 years. This is allegedly ineffective assistance because the jury could not have merely imprisoned him for 180 days. Thus, in asking that it do so, counsel sought the impossible which "likely influenced the jurors to reject probation completely in favor of a penitentiary term," says appellant. We reject the proposition.

■ While it may be that counsel urged the jury to assess an impossible punishment, and assuming that it was not some trial tactic, the requisite nexus between the conduct and verdict is missing. Simply put, we cannot logically conclude that the mistaken request for 180 days somehow swayed the jury to impose 30 years. Again, the test for prejudice is whether, but for counsel's performance, the result would have differed. Implicit therein is the need for a causative link. But just any causative nexus is not enough. Rather, precedent requires a *reasonable* causative nexus. *Strickland v. Washington,* 466 U.S. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693; *Thompson v. State,* 981 S.W.2d 319, 324 (Tex.App.—Houston [14th Dist.] 1998, pet. granted). In other words, one must be able to say that there is a reasonable chance that the error caused the outcome. *Id.*

Here, we conceive of no such rational link between the mistake in question and the punishment levied. Nor does appellant attempt to explain the potentiality of any such nexus other than to simply say that one "likely influenced" the other. Furthermore, it is reasonable to suggest that the jurors were swayed to forego probation due to 1) the grievous nature of appellant forcibly abducting and raping his victim with the assistance of a deadly weapon, and 2) the evidence that he had raped at least one other female. Yet, it is unreasonable to suggest that the jurors

opted to imprison him for 30 years merely because his attorney mistakenly asked for 180 days. In sum, we find, as a matter of law, no reasonable probability of a nexus between the error and the result.

## II. Definition Of Reasonable Doubt

■ Appellant argues that the trial court reversibly erred when it failed to define "reasonable doubt" in the charge given at the punishment phase. Evidence of unadjudicated extraneous offenses was admitted during the punishment phase of trial. The court accordingly charged the jury that it could not consider same for any purpose unless it found and believed "beyond a reasonable doubt" that appellant committed the extraneous crimes. However, it did not couple the instruction with a definition of "reasonable doubt," though such a definition was included in the charge submitted at the conclusion of the guilt/innocence phase of trial. Nor did the appellant request that such a definition be included in the charge. Nevertheless, he posits now that because it was omitted, the court committed reversible error. We reject the contention as waived.

■ Several years ago the Texas Court of Criminal Appeals held that "if the defendant so requests at the guilt/innocence phase . . . the trial court must instruct the jury not to consider extraneous offense evidence admitted for a limited purpose unless it believes beyond a reasonable doubt that the defendant committed the extraneous offense." *George v. State,* 890 S.W.2d 73, 76 (Tex.Crim.App.1994).[2] Thus, if evidence of extraneous offenses was admitted and the defendant requested the aforementioned instruction, then the trial court was obligated to provide it. However, no such instruction was, and is, required if no one requests it.

While the Court reserved determination of whether this rule also applies to the

**2.** For purposes of this opinion we call the instruction the *George* instruction.

punishment phase of trial, *id.* at 76 n. 8, intermediate courts of appeal have not. Two such courts hold that it does apply. *E.g., Franklin v. State,* 986 S.W.2d 349, 358 (Tex.App.—Texarkana 1999, pet. ref'd) (citing *McQueen v. State,* 984 S.W.2d 712 (Tex.App.—Texarkana 1998, no pet.)); *Tow v. State,* 953 S.W.2d 546, 548 (Tex. App.—Fort Worth 1997, no pet.).[3] However, they conclude that the failure to ask for submission of the *George* instruction relieves the trial court of any duty to submit it. *Id.* In so holding, both courts relied upon *Mitchell v. State,* 931 S.W.2d 950 (Tex.Crim.App.1996). Interestingly, Judge Overstreet did state in *Mitchell* that the use of extraneous offenses during the punishment phase should be analogous to that of the guilt/innocence phase "regarding burden of proof." *Id.* at 954. So, he concluded that *George* should also be applicable to the punishment phase. But Judge Overstreet's opinion did not garner support from a majority of the judges on the Court of Criminal Appeals. In effect, it was, and is, simply an opinion of a plurality of the Court, and therefore, non-binding. Given this, some could say the courts in *Tow* and *Franklin* were somewhat mistaken in citing and simply relying on *Mitchell.*

■ Nevertheless, we, like Judge Overstreet, see no substantial difference between the use (and potential harm arising from the use) of extraneous offenses during the guilt/innocence and punishment phases. Indeed, it would seem that the use of extraneous offenses during the guilt/innocence phase poses greater risk given the presumption of innocence and the possibility of a jury finding the accused guilty merely because he previously committed bad acts. At least, by the time the jury is asked to assess punishment, the accused's guilt has been determined. So, if a trial court is not obligated to provide the *George* instruction during the guilt/innocence phase unless requested, there is little reason to apply a different rule during the punishment phase. Consequently, we agree with the ultimate holdings of *Tow* and *McQueen* and conclude that, during the punishment phase, the trial court is obligated to provide a *George* instruction, if requested. Should no one ask for it, the trial court errs not in omitting it from the charge.

■ Next, because the *George* instruction is not required unless requested, it is illogical to enact a rule obligating the court to define an element of the instruction, that is, beyond reasonable doubt, in all instances. That this is true is best illustrated by a simple question. What reason is there in obligating a trial court to always define a term or phrase in an instruction which it need not always give? The answer is none. Simply put, our requiring a trial court to define a term when it does not use that term in an instruction borders on absurdity. To avoid this absurdity, we treat the duty to define a term in the instruction much like the duty to give the *George* instruction in the first instance and hold that if no one requests that the definition be included, then the court need not include it in the charge. That the trial court may have included the instruction sua sponte makes no difference. The appellant must still request the definition to preserve his right to it. Since appellant did not solicit the definition of reasonable doubt, the trial court did not err in omitting it.

We find the authorities cited by appellant unpersuasive. Neither *Geesa v. State,* 820 S.W.2d 154 (Tex.Crim.App.1991),

---

**3.** Throughout its brief, the State alludes to *Tow* as a decision rendered by this court and urges us not to deviate from our own precedent. *Tow,* however, was rendered by the the Court of Appeals for the Second District in Fort Worth. Thus, *Tow* is neither our precedent nor binding upon us. Indeed, the question is an issue of first impression in this court.

*Reyes v. State*, 938 S.W.2d 718 (Tex.Crim. App.1997), *Martinez v. State*, 969 S.W.2d 139 (Tex.App.—Fort Worth 1998, pet. granted), *Huizar v. State*, 966 S.W.2d 702 (Tex.App.—San Antonio 1998, pet. granted), nor *Fields v. State*, 966 S.W.2d 736 (Tex.App.—San Antonio 1998, pet. granted), address the absurdity which we considered here. This may be because *Martinez*, *Huizar*, and *Fields* implicitly rely upon *Geesa* and *Reyes*. And, neither *Geesa* nor *Reyes* concern the omission of a reasonable doubt definition when the need, if any, for it is triggered by the admission of evidence of extraneous offenses. They involved the need to submit the instruction when the accused's guilt for the crime with which he was formally charged is being determined during the guilt/innocence phase.

■ Furthermore, the Texas Court of Criminal Appeals has itself distinguished between instructions related to extraneous offenses and instructions related to the accused's guilt for the offense with which he is being formally tried. *George* is a good example of this; while the court must submit a definition of reasonable doubt vis-a-vis the accused's guilt for the crime charged in the indictment, *Reyes v. State*, *supra*, no instruction is needed on the burden of proof vis-a-vis extraneous offenses when no one requests it.[4] *George v. State*, *supra*; see *Martinez v. State*, *supra* (distinguishing *Mitchell*, and therefore *George*, because those two cases dealt with instructions triggered by the presence of evidence of extraneous offenses while the issue in *Martinez* dealt with accusations contained in the enhancement paragraphs

4. This distinction illustrates one other obvious point. Neither the *George* instruction nor the defining of reasonable doubt as it relates to a *George* instruction are fundamental procedural requirements. Consequently, *Posey v. State*, 966 S.W.2d 57 (Tex.Crim.App.1998), compels us to hold that they are subject to waiver. *Id.* at 61 n. 9 (stating that a harm analysis must be undertaken only when the

of an indictment). Thus, we merely follow the lead set by the Court of Criminal appeals in holding as we do.

Accordingly, we affirm the judgment.

trial court is required to submit an instruction absent a request from the accused). Also, they being non-fundamental and subject to waiver lends further credence to our decision that one waives the right to the definition of reasonable doubt if not requested, even though the court *sua sponte* submits a *George* charge.