Becker v. State



COURT OF APPEALS


EIGHTH DISTRICT OF TEXAS


EL PASO, TEXAS





JOSE MELCHOR,


 Appellant,


v.


THE STATE OF TEXAS,


 Appellee. 

§


 


§


 


§


 


§


 


§



§

No. 08-06-00111-CR



Appeal from


 205th District Court


of El Paso County, Texas


(TC # 20050D03035)




O P I N I O N



 Jose Melchor appeals his convictions of intoxication manslaughter (Count I) and accident
involving personal injury or death (Count III). A jury found Appellant guilty of Counts I and III and
further found that he had used a deadly weapon in Count I. The jury assessed his punishment at
imprisonment for a term of twenty years on Count I and a term of five years on Count III. We affirm.

FACTUAL SUMMARY


 On the afternoon of September 17, 2004, Felix Nunez went to visit his aunt, Fermina Cano. 
At around 6 p.m., they decided to walk over to Dyer Street to purchase some lottery tickets and ice
cream. Fermina's young daughter, Nellie, accompanied them. It was still daylight and none of the
vehicles used headlights. Felix and Nellie crossed Dyer first, and Fermina followed behind them. 
When Felix and Nellie reached the other side, he saw his uncle and another cousin in a car and
stopped briefly to say hello. As Felix spoke with his uncle, he suddenly heard a loud impact and he
saw Fermina flying through the air. He did not see the actual impact but he had glanced toward
Fermina just before the impact and saw that she was about to step on the curb. Felix described the
vehicle which struck Fermina as a white, old-style Lincoln Town Car.

 Teodoro Munoz and Roberto Cruz were in a car crossing Dyer when Teodoro saw two of his
cousins, Felix and Nellie, and his aunt Fermina across the street. They stopped in the parking lot and
waited for them. Felix and Nellie crossed the street first and Fermina followed. As Teodoro talked
with his cousins, he suddenly heard Roberto yelling and he looked towards the street. He saw a
vehicle strike Fermina just as she reached the curb. Teodoro estimated the vehicle's speed as
exceeding 50 m.p.h. and he described the vehicle as a large, white older model "box car." (1) The car
did not brake at all; it swerved a little after striking Fermina but the driver did not stop. Immediately
after the accident, Teodoro and Felix ran to their grandmother's house nearby to tell her what had
happened and to call an ambulance. Roberto remained at the scene with Nellie. 

 Roberto Cruz knew Fermina Cano because he was dating her sister, Laura Cano Munoz. 
Roberto picked up Laura's son, Teodoro, and went to the store to buy groceries for a cookout. They
saw Felix and Nellie cross the street first while Fermina waited for some traffic to pass. They began
talking with Felix and Nellie and Roberto saw Fermina start across the street. Roberto noticed a car
up the street but he did not think anything about it because it was so far away. When Fermina got
close to the curb, she said, "Hi Bobby" and he waved at her. He turned back around to tell Felix and
Nellie goodbye when he suddenly heard a loud impact and saw Fermina flying through the air. The
car was a dirty white Gran Marquis or Ford LTD. Roberto estimated that the car was traveling 40
to 45 m.p.h. He did not hear it brake before the impact, and he did not see it brake after the accident. 
Roberto wanted to follow the white car, but Nellie became hysterical so he remained at the scene
with her. 

 Ricky Lozano was working at a McDonald's restaurant located near the scene of the accident. 
He was taking out the trash and saw a white Lincoln hit a woman who was crossing Dyer. The
vehicle was traveling at about 50 m.p.h.. The driver did not brake prior to the collision, and he did
not brake or stop after hitting the woman. 

 Adrian Fogg had cashed his paycheck at a store on Dyer and was waiting for a bus when he
saw a dirty white LTD or Marquis strike a pedestrian. The vehicle was traveling about 50 m.p.h. and
struck a woman who had just stepped off the curb and into the street. There were no other vehicles
on the street at the time. 

 Approximately three hours after the accident, a person provided El Paso police with
information regarding the location of the vehicle that had been involved in the hit and run accident. 
Officers Johnny Ferrer and Raul Meraz went to the address and found a white Lincoln Town Car
parked in the driveway. The vehicle had extensive damage to the right front quarter panel, hood, and
windshield. Several individuals were drinking in front of the house. Ferrer and Meraz went to the
door and determined that the owner of the vehicle, Appellant, was inside. Meraz went upstairs
where he met Appellant's wife who was crying. Appellant was in the bathroom washing his face
and rinsing out his mouth. When asked if he knew why the police were there, Appellant nodded yes
and became teary-eyed. Meraz asked Appellant if he would go downstairs with him and Appellant
asked if he could kiss his daughter goodbye. Meraz allowed him to do that, and they walked
downstairs and outside. Officer Ferrer pointed to the white vehicle in the driveway and asked
Appellant if he owned it. Rather than answering the question, Appellant volunteered that he was
driving the vehicle, he had been drinking, and he had hit somebody. The officers arrested Appellant
and placed him in the patrol car. Appellant subsequently gave a written statement admitting that he
had been drinking beer that afternoon while getting a new tattoo. Afterward, he stopped at the Super
Burro restaurant to get something to eat. He left the restaurant and was driving on Dyer when he felt
his car hit something. He did not see anyone but panicked and drove home. He waited until the
police came for him. 

 Elva Fairas was working at the Super Burro on September 17, 2004. Super Burro is five
blocks from where Cano was crossing the street. Fairas recalled that a man came into the restaurant
sometime after 5 p.m. when her shift began. She believed the man was drunk because he was
staggering and she could smell alcohol. He remained at the restaurant for about half an hour and
when he left, she saw that he was driving a white car. She also noticed that he left the parking lot
in a hurry. Fairas did not recognize Appellant. 

 David Flores also began his shift at Super Burro at 5 p.m. that same day. At about 5:30 p.m.,
a Hispanic man dressed in black came in the restaurant and placed his order with Flores. The man
had on a short sleeved shirt and Flores noticed that his arms were covered in tattoos. Flores could
tell that the man was "under the influence of something" because he could smell alcohol on the man,
his eyes were red, and his speech was not clear. Further, the man had to put his hand on tables to
balance himself while walking. When the man left the restaurant twenty or thirty minutes later,
Flores saw that he was driving a white Crown Victoria or Marquis and he heard the tires screech as
the car left the parking lot. Flores described Appellant as being similar to the man who had been in
the restaurant but he was not 100 percent certain. Appellant's hair was shorter and Flores could not
tell whether he had tattoos because his arms were covered. At the State's request, Appellant was
required to remove his shirt and show the jury the tattoos on his arms.

 The indictment alleged that Appellant committed the offenses of intoxication manslaughter
(Count I), manslaughter (Count II), and accident involving personal injury or death (2) (Count III). The
jury found Appellant guilty of all three counts and made an affirmative deadly weapon finding in
connection with Counts I and II. Prior to the beginning of the punishment phase, the State elected
to proceed only on Counts I and III. The jury assessed Appellant's punishment at imprisonment for
a term of twenty years on Count I and a term of five years on Count III.

LEGAL SUFFICIENCY


 In Point of Error One, Appellant challenges the legal sufficiency of the evidence supporting
his conviction of intoxication manslaughter. More specifically, he argues that the evidence did not
establish beyond a reasonable doubt that he had lost the normal use of his mental and physical
faculties by reason of the introduction of alcohol at the time of the collision.

 In considering legal sufficiency, we review all the evidence, both State and defense, in the
light most favorable to the verdict to determine whether any rational trier of fact could have found
the essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307,
318-19, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); Geesa v. State, 820 S.W.2d 154, 159
(Tex.Crim.App. 1991). We consider all of the evidence, whether admissible or inadmissible. Wilson
v. State, 7 S.W.3d 136, 141 (Tex.Crim.App. 1999); Johnson v. State, 967 S.W.2d 410, 412
(Tex.Crim.App. 1998). We do not resolve any conflict of fact or assign credibility to the witnesses,
as it was the function of the trier of fact to do so. See Adelman v. State, 828 S.W.2d 418, 421
(Tex.Crim.App. 1992); Matson v. State, 819 S.W.2d 839, 843 (Tex.Crim.App. 1991). Instead, our
duty is only to determine if both the explicit and implicit findings of the trier of fact are rational by
viewing all of the evidence admitted at trial in a light most favorable to the verdict. Adelman, 828
S.W.2d at 422. In so doing, any inconsistencies in the evidence are resolved in favor of the verdict. 
Matson, 819 S.W.2d at 843. The standard of review is the same for both direct evidence and
circumstantial evidence cases. Geesa, 820 S.W.2d at 158.

 A person commits intoxication manslaughter if the person (1) operates a motor vehicle in a
public place, (2) is intoxicated, and (3) by reason of that intoxication causes the death of another by
accident or mistake. Tex.Penal Code Ann. § 49.08 (Vernon 2003). "Intoxicated" means not
having the normal use of mental or physical faculties by reason of the introduction of alcohol, a
controlled substance, a drug, a dangerous drug, a combination of two or more of those substances,
or any other substance into the body. Tex.Penal Code Ann. § 49.01(2)(A). Count I of the
indictment alleged that Appellant was operating a motor vehicle in a public place while intoxicated
by reason of the introduction of alcohol into his body and by reason of that intoxication caused the
death of Fermina Cano.

 Appellant complains that the State failed to offer direct evidence that he was intoxicated. 
While intoxication under Section 49.01(2)(A) may be proven by direct opinion testimony, it may
also be established by circumstantial evidence. See Smithhart v. State, 503 S.W.2d 283, 285
(Tex.Crim.App. 1974); Hernandez Guerreo v. State, 773 S.W.2d 775, 776 (Tex.App.--Corpus
Christi 1989, no pet.). Evidence of erratic driving, a collision, failure to apply brakes in order to
avoid a collision, and fleeing the scene of an accident are indicative of impaired judgment. See
Chaloupka v. State, 20 S.W.3d 172, 175 (Tex.App.--Texarkana 2000, pet. ref'd)(erratic driving, a
collision, and fleeing scene); Frohwein v. State, No. 08-03-00488-CR, 2005 WL 1413210, *6
(Tex.App.--El Paso June 16, 2005, pet. ref'd)(erratic driving, failure to apply brakes); Markey v.
State, No. 14-02-00281-CR, 2003 WL 253299 *2 (Tex.App.--Houston [14th Dist.] February 6, 2003,
no pet.)(running a stop sign, nearly colliding with another vehicle, then landing in ditch and crashing
through fence). When evidence of impaired judgment is combined with evidence of alcohol
consumption, the evidence is sufficient to establish that the defendant did not have the normal use
of his mental and physical faculties due to the introduction of alcohol into the driver's body. See
Chaloupka, 20 S.W.3d at 175 (evidence was legally sufficient to support driving while intoxicated
conviction, even though trooper did not observe defendant driving, where witnesses observed that
defendant drove erratically on highway and caused collision, that after striking other vehicle,
defendant left scene of accident, sped away, and stopped few miles down road at rest area, defendant
got out of vehicle with two beers and paper sack with unknown contents, stumbled, and could not
keep balance).

 Appellant admitted that he was drinking beer at a tattoo parlor and that he subsequently got
something to eat at the Super Burro restaurant. Both Elva Fairas and David Flores were working at
Super Burro restaurant and each of them saw an intoxicated man enter the restaurant at
approximately 5:30 p.m. which was approximately thirty minutes before the accident occurred. They
noticed that the man smelled of alcohol and was having difficulty with his balance. Characterizing
the man as "under the influence of something," Flores also recalled that the man's speech was
impaired. According to Flores and Fairas, the intoxicated man stayed approximately twenty to thirty
minutes before leaving in a hurry. Flores saw the intoxicated man leave the parking lot in a
white Lincoln or Gran Marquis with the tires screeching. Neither witness could make an
unequivocal in-court identification of Appellant but Flores stated that Appellant was similar in
appearance. Flores added that the "only difference" between Appellant and the man in the restaurant
was that Appellant's hair was shorter and Flores could not see whether Appellant had tattoos all over
his arms because he was wearing a long-sleeved shirt at trial. Consequently, Flores could not state
with 100 percent certainty that Appellant was the same man. The record reflects that Appellant's
arms have numerous tattoos. Although Fairas and Flores did not make an in-court identification of
Appellant as the man they saw in the restaurant, the evidence is sufficient to permit a jury to
conclude that the intoxicated man seen in the restaurant was Appellant.

 Other evidence admitted at trial showed that Appellant drove down Dyer at a high rate of
speed and in excess of the posted speed limit; he did not brake or otherwise attempt to avoid striking
Cano who was by all accounts close to the curb when she was struck; he did not brake after striking
her even though his vehicle had extensive damage to the front, hood, and windshield; and he fled
the scene. As further evidence that Appellant's physical and mental faculties were impaired,
Appellant said in his written statement that he did not see Cano but only felt his vehicle hit
"something." Because we conclude that the evidence is legally sufficient to prove the intoxication
element beyond a reasonable doubt, we overrule Point of Error One.

DISPLAY OF TATTOOS


 In Point of Error Two, Appellant contends that the trial court erred by granting the State's
motion for an in-court demonstration and requiring him to remove his long-sleeved shirt and display
his tattoos because the probative value of the demonstration was outweighed by the danger of unfair
prejudice under Tex.R.Evid. 403.

 At the conclusion of David Flores' testimony, the State requested an in-court demonstration
of Appellant's arms. Appellant objected on the grounds that Appellant had not been identified as
the person seen by Fairas and Flores in the restaurant, the State could introduce Appellant's mug shot
to show the length of his hair at the time of the arrest, and there were many people who had tattoos
in that area of town. He additionally objected that it violated his Fifth Amendment privilege against
self incrimination. Noting that the booking photograph did not depict Appellant's arms, the State
persisted in its request that Appellant show his arms to the jury. The court did not immediately rule
but adjourned and gave the parties an opportunity to present case law the following morning. The
next day, the State renewed its request but asked that Appellant remove his shirt rather than merely
rolling up the sleeves so that the jury could see his arms in their entirety. Appellant conceded that
the court could require him to roll up his sleeves and demonstrate his arms but objected to removing
his shirt completely because it would be an "improper in-court identification" and would be
"improperly suggestive." After determining that Appellant was not wearing a tee shirt beneath his
long-sleeved shirt, the court essentially found that there was no alternative to requiring Appellant
to remove his shirt in order to reveal the tattoos on his arms. The court overruled Appellant's
objections and permitted the in-court demonstration.

Preservation of Error


 On appeal, Appellant argues that the trial court should have denied the State's request under
Rule 403 because requiring him to bare his entire upper torso before the jury was more prejudicial
than probative. As evidence of unfair prejudice, he asserts that it is "probably common knowledge
that those involved in the use of controlled substances oftentimes have tattoos to either make finding
needle tracks more difficult or exhibited as a physical characteristic of persons heavily involved in
controlled substances activity." Appellant argues that his trial objection that the demonstration was
improperly suggestive should be construed as an objection under Rule 403.

 To preserve error on appeal, the complaining party must make a timely, specific objection
and obtain a ruling on the objection. Tex.R.App.P. 33.1(a); see Broxton v. State, 909 S.W.2d 912,
918 (Tex.Crim.App. 1995). The point of error or issue raised on appeal must also comport with the
objection made at trial. Santellan v. State, 939 S.W.2d 155, 171 (Tex.Crim.App. 1997); Broxton,
909 S.W.2d at 918. At trial, Appellant conceded that he could be made to show the tattoos on his
arms but objected to baring his chest because it was "improper identification" and would be
"improperly suggestive." On appeal, we understand him to argue that any in-court demonstration
of his tattoos is violative of Rule 403. Given Appellant's concession at trial that he could be
required to show the tattoos on his arms, we find that Appellant effectively withdrew his objections
regarding the demonstration of his arms.

 The only question remaining is whether Appellant's objections that requiring him to bare his
chest was "improper identification" and "improperly suggestive" comport with his argument on
appeal that the danger of unfair prejudice from the in-court demonstration substantially outweighed
the probative value under Rule 403. An argument that an identification procedure is improperly
suggestive is distinct from a complaint made under Rule 403. The record does not reflect that it was
apparent to the prosecutors that Appellant's objection was based on Rule 403. And there is no
indication that the trial judge understood that she was being called upon to perform the balancing
analysis required by Rule 403. Thus, the trial court was never given an opportunity to rule on this
objection. Because Appellant's trial objection does not comport with the argument raised on appeal,
we find that the complaint is not preserved for our review. Point of Error Two is overruled.


INEFFECTIVE ASSISTANCE


 In Points of Error Three, Four, and Five, Appellant argues that he was denied the effective
assistance of counsel because trial counsel failed to investigate and prepare for trial, failed to call any
character witnesses at the punishment phase, and failed to file a sworn motion for new trial. 

Standard of Review


 The standard for determining claims of ineffective assistance under the Sixth Amendment
is the two-step analysis adopted by the United States Supreme Court in Strickland v. Washington,
466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). See Hernandez v. State, 988 S.W.2d 770,
771-72 (Tex.Crim.App. 1999). Under the first prong, the defendant must show that counsel's
performance was deficient to the extent that counsel failed to function as the "counsel" guaranteed
by the Sixth Amendment. Jackson v. State, 877 S.W.2d 768, 771 (Tex.Crim.App. 1994). Under the
second prong, the defendant must establish that counsel's deficient performance prejudiced the
defense. Strickland, 466 U.S. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693; Jackson, 877 S.W.2d
at 771. Prejudice is established by a showing that there is a reasonable probability that but for
counsel's unprofessional errors, the result of the proceeding would have been different. Strickland,
466 U.S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698; Jackson, 877 S.W.2d at 771.

Character Witnesses


 Appellant argues that counsel was ineffective because he permitted the character witnesses
to violate the rule, and therefore, he was unable to call them as witnesses during the punishment
phase. Appellant filed a motion for new trial raising an allegation of ineffective assistance. During
the new trial hearing, trial counsel testified that he did not call any punishment witnesses because
he had "left [Appellant's] family, including his wife, his mother, everyone in the courtroom in
violation of the rules so I was unable to call them as character witnesses." He knew the rule had
been invoked but he inadvertently allowed them to remain in the courtroom. According to counsel,
there were no other character witnesses. Counsel described his conduct as a mistake and probably
legal malpractice. The State responded that counsel had not even attempted to call the witnesses at
the punishment phase. Characterizing the family members as "not . . . a very sympathetic lot," the
prosecutor also argued that the court should not assume the State would have objected if counsel had
called the family members as witnesses during the punishment phase.

 Allegations of ineffective assistance of counsel must be firmly founded in the record and the
record must affirmatively demonstrate the alleged ineffectiveness. Mallett v. State, 65 S .W.3d 59,
63 (Tex.Crim.App. 2001); Thompson v. State, 9 S.W.3d 808, 814 (Tex.Crim.App. 1999). The
failure to call a witness may support an ineffective assistance of counsel claim only if it is shown the
witness was available and the defendant would have benefitted from the testimony. See Butler v.
State, 716 S.W.2d 48, 55 (Tex.Crim.App. 1986); Garrett v. State, 998 S.W .2d 307, 314 (Tex.App.--Texarkana 1999, pet. ref'd, untimely filed).

 Citing United States v. Cronic, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). 
Appellant maintains that he is not required to establish prejudice in order to prevail on his ineffective
assistance of counsel claim. In United States v. Cronic, the Supreme Court recognized that in some
circumstances, that there is a presumption of prejudice. Cronic, 466 U.S. at 658, 104 S.Ct. at 2046. 
These circumstances include the complete denial of counsel, the failure of counsel to subject the
prosecution's case to meaningful adversarial testing, and the situation in which surrounding
circumstances make it unlikely that any counsel could provide effective assistance. Cronic, 466 U.S.
at 659-60; 104 S.Ct. at 2047-48. We do not find that any of these circumstances here, and we will
hold Appellant to the burden of proving both deficient performance and prejudice.

 The record does not reflect that counsel attempted to call Appellant's family members as
witnesses. We will not speculate that the State would have objected based on a violation of the rule
of witnesses or that the court would have sustained the objection. Further, Appellant did not offer
any evidence regarding the substance of the witnesses' testimony or how it would have benefitted
Appellant. He suggests that the absent witnesses could have testified regarding his successful
completion of misdemeanor and felony probation but there is no evidence that the witnesses were
aware of these facts. Thus, the record does not support a conclusion that counsel's inadvertent
mistake resulted in the exclusion of beneficial testimony.

Failure to Investigate


 Appellant also contends that trial counsel failed to investigate and prepare for trial. To
support a claim of ineffective assistance for failure to investigate, an appellant must show that he had
a viable defense that his attorney failed to discover. Butler, 716 S.W.2d at 55; King v. State, 649
S.W.2d 42, 43 (Tex.Crim.App. 1983). As evidence of counsel's failure to investigate, Appellant
points to trial counsel's statements during trial that he had not been given notice of the State's intent
to introduce a DWI as an extraneous offense. The State introduced evidence that it had faxed the
extraneous offense notice to trial counsel and the court noted that the certificate of service indicated
counsel had been served, but counsel insisted he had not received the faxed notice or a hard copy. 
The trial court specifically found that the fax receipt confirmed that the extraneous offense notice
had been successfully faxed to counsel's fax number. At the hearing held on Appellant's motion for
new trial, Appellant did not offer any evidence relevant to counsel's investigation and preparation
for trial, and he did not establish that counsel failed to discover a viable defense. We find that
Appellant has failed to carry his burden under Strickland. See Mata v. State, 1 S.W.3d 226, 228
(Tex.App.--Corpus Christi 1999, no pet.)(where record silent regarding counsel's investigation,
appellant's ineffective assistance of counsel claim failed); White v. State, 999 S.W.2d 895, 900
(Tex.App.--Amarillo 1999, pet. ref'd)(allegation that counsel failed to fully acquaint himself with
the circumstances of the case and history of appellant was mere speculation since the record did not
depict the extent, if any, of counsel's investigation and preparation).

Sworn Motion for New Trial


 Appellant also argues that his attorney (3) rendered ineffective assistance by filing a motion for
new trial which was unsworn and unsupported by affidavits. He asserts that the trial court would
have been required to grant the motion had it been verified and if affidavits from the witnesses had
been attached. The only ground raised in the motion for new trial was that counsel permitted
Appellant's wife and mother to remain in the courtroom during the trial in violation of the rule. The
motion asserted that the witnesses would have presented mitigating evidence if they had testified but
it did not specify the substance of their testimony. Despite the deficiencies in the motion, the trial
court afforded Appellant a hearing on his motion for new trial. Thus, Appellant had the opportunity
to present evidence relevant to this allegation. Appellant did not offer any evidence at the hearing
regarding the substance of the witnesses' testimony and we will not speculate that mitigating
evidence existed. The record does not support Appellant's contention that he was entitled to a new
trial if only counsel had filed a sufficient motion for new trial. Points of Error Three, Four, and Five
are overruled.

FACTUAL SUFFICIENCY


 In his final point of error, Appellant challenges the factual sufficiency of the evidence
supporting his conviction of intoxication manslaughter. More specifically, he argues that the
evidence is factually insufficient to prove intoxication.

 In reviewing the factual sufficiency of the evidence to support a conviction, we are to view
all the evidence in a neutral light, favoring neither party. Johnson v. State, 23 S.W.3d 1, 7
(Tex.Crim.App. 2000); Clewis v. State, 922 S.W.2d 126, 129 (Tex.Crim.App. 1996). In performing
our review, we are to give due deference to the fact finder's determinations. See id. at 8-9; Clewis,
922 S.W.2d at 136. The fact finder is the judge of the credibility of the witnesses and may "believe
all, some, or none of the testimony." Chambers v. State, 805 S.W.2d 459, 461 (Tex.Crim.App.
1991). Evidence is factually insufficient if it is so weak that it would be clearly wrong and
manifestly unjust to allow the verdict to stand, or the finding of guilt is against the great weight and
preponderance of the available evidence. Johnson, 23 S.W.3d at 11. Therefore, the question we
must consider in conducting a factual sufficiency review is whether a neutral review of all the
evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously weak
as to undermine confidence in the fact finder's determination, or the proof of guilt, although
adequate if taken alone, is greatly outweighed by contrary proof. See id. Under the first prong of
Johnson, we cannot conclude that a conviction is "clearly wrong" or "manifestly unjust" simply
because, on the quantum of evidence admitted, we would have voted to acquit had we been on the
jury. Watson v. State, 204 S.W.3d 404, 417 (Tex.Crim.App. 2006). Under the second prong of
Johnson, we cannot declare that a conflict in the evidence justifies a new trial simply because we
disagree with the jury's resolution of that conflict. Id. Before finding that evidence is factually
insufficient to support a verdict under the second prong of Johnson, we must be able to say, with
some objective basis in the record, that the great weight and preponderance of the evidence
contradicts the jury's verdict. Id.

 In support of his argument that the evidence is factually insufficient, Appellant directs our
attention to the evidence which negates a finding of intoxication: (1) his statement did not address
how many beers he had consumed or over what time period, (2) he was not intoxicated when arrested
several hours after the accident, (3) Fairas was unable to identify him, and (4) Flores did not identify
him with 100 percent certainty. As acknowledged by Appellant, there is also evidence supporting
a finding of intoxication: (1) Appellant admitted that he had been drinking beer while getting a
tattoo, (2) Fairas and Flores testified that an intoxicated man with tattoos on both arms came into the
Super Burro restaurant and left in a vehicle matching the description of the one Appellant was
driving, (3) Flores testified that Appellant looked similar to that man, (4) Appellant drove erratically
and failed to brake either before or after striking Cano, (5) Appellant fled the scene; and (6)
Appellant admitted to the arresting officers and to the officer taking his statement that he had been
drinking and had struck someone. The proof pertaining to the intoxication element is not so
obviously weak as to undermine confidence in the fact finder's determination. Further, the evidence
related to that element is not greatly outweighed by contrary proof. Accordingly, we find the
evidence factually sufficient to support the jury's determination that Appellant is guilty beyond a
reasonable doubt of intoxication manslaughter. We overrule Point of Error Six and affirm the
judgment of the trial court. 

October 25, 2007 

 ANN CRAWFORD McCLURE, Justice

Before Chew, C.J., McClure, and Carr, JJ.


(Do Not Publish)
1. The posted speed limit is 40 miles per hour. 
2. See Tex.Transp.Code Ann. §§ 550.021, 550.023 (Vernon 1999). This offense is also commonly referred
to as failure to stop and render aid. 
3. Appellant was represented by one attorney at trial and by another attorney in connection with the motion for
new trial.